DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1918.

---

## Hattie S. Moury, Administratrix, Appellee, v. Latham Coal and Mining Company, Appellant.

1. MINES AND MINERALS, § 182*—*when question for jury whether cage was safely constructed.* In an action to recover for the death of a miner due to a fall from a cage, in which he was riding to the surface, where it appeared that the shaft was separated from an adjoining shaft by timbers placed horizontally 12 inches apart; that the other three sides of the shaft were boarded up; that the cage ran up 'and down upon two guides of 6 by 6-inch timbers, one guide being attached to the partition wall and the other to the opposite wall; that the cage was fastened to them with shoes; that there was a space of from 6 to 8 inches between the platform of the cage and the partition wall as it traveled up and down the shaft; that there were handholes for men to use when riding, but that they were not rigid and swung; that the cage had no sides to it and had no shield or guard about it; that the cage was operated in total darkness and that in some way deceased fell between the platform of the cage and the partition wall and down the shaft, it was a question for the jury whether the cage was safely constructed.

2. WORKMEN'S COMPENSATION ACT, § 2*—*what is effect of refusal of employer to abide by.* An employer who declines to abide

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

by the Workmen's Compensation Act is deprived of the common-law defenses of contributory negligence, assumption of risk and the like.

3. WORKMEN'S COMPENSATION ACT, § 11*—*when death of miner arises out of and in course of his employment.* A miner meets his death as the result of an injury arising out of and in the course of his employment, within the Workmen's Compensation Act, where, while he is in the cage which is transporting him to the surface at the end of his day's work, and is on his way home, he is killed as the result of a fall down the shaft.

Appeal from the Circuit Court of Logan county; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the April term, 1918. Affirmed. Opinion filed October. 22, 1918.

BEACH & TRAPP, for appellant.

COVEY & WOODS, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

This is an appeal from a judgment for the sum of $1,500 entered upon the verdict of a jury in a suit to recover damages for the death of Charles Ernest Moury, claimed to have been caused by the negligence of appellant.

Appellant operated a coal mine near the City of Lincoln, in Logan county, and deceased worked in said mine as an employee of appellant. The declaration in the case averred, and the proofs show, that appellant had declined to become bound by the provisions of the Workmen's Compensation Law of this State. Two principal defenses are urged by appellant against appellee's right to recover: (1) That no negligence was proven on the part of appellant; and (2) that the accidental injury to the deceased, which caused his death, did not arise out of and in the course of his employment.

The mine of defendant was composed of two shafts constructed side by side, called the north and south shaft, respectively. They were separated by 8 by 8-inch

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

timbers, called buntons, which laid horizontally from top to bottom, about 12 inches apart, thus leaving an opening between the two shafts of 12 inches between each timber. The other three sides of each shaft were boarded up. A cage ran up and down each shaft upon two guides made out of 6 by 6-inch timbers, one guide being attached to the bunton wall and the other to the opposite wall. The cages were fastened to them with shoes. At the top and the bottom of the shaft an open space of at least 6 inches existed between the edge of the cage and the buntons, but this space varied at points between the top and the bottom, and it is conceded that in some places the space between the edge of the cage and the bunton was as much as 8 inches. There were handholds in the cage for the miners to grasp while riding thereon. These handholds were from 5½ to 6 feet above the floor of the cage, and were not rigid, but were constructed so that they would swing. The cage itself had no sides to it and had no shield or guard or protection of any kind around it.

About 5 o'clock in the afternoon of June 30, 1917, the deceased, with three companions, having finished their day's work in the mine, came to the bottom of the shaft for the purpose of being hoisted in one of the cages to the surface. They got upon the north cage, and the deceased stood on the southeast part thereof, facing east. He carried his dinner bucket in the crotch of his right arm. As the cage started up the shaft it was in complete darkness and nothing therein was visible. The companions of the deceased testified that when the cage was about halfway to the top they heard a sort of a crunching noise, but on account of the darkness could not see anything. When the cage arrived at the top the deceased was found to be missing, and thereafter his body was found at the bottom of the shaft, crushed and lifeless.

It is apparent that either the deceased fell or was

caught and drawn through the open space between the edge of the cage and the buntons. His body in some manner, and for some reason, passed through this open space, for in no other manner could it fall to the bottom of the shaft.

Paragraph C. of section 10, ch. 93, Hurd's Rev. St. (J. & A. ¶ 7484), provides among other things that "said cages must be safely constructed." Whether this cage in question, operated in a shaft in total darkness, with unprotected sides and with a space between the edge thereof and the side of the shaft sufficient for a man's body to pass through, in case he should be so unfortunate as to step into said space or to have some portion of his body caught by the timbers in the shaft, was safely constructed, was a question of fact for the jury to determine. Appellant, having declined to abide by the Workmen's Compensation Act, was deprived of the common-law defenses of contributory negligence, assumption of risk and the like.

Deceased had finished his day's work and had proceeded to the bottom of the shaft for the purpose of being hoisted to the surface to return to his home, and for this reason it is claimed that the injury which caused his death did not arise out of and in the course of his employment. Such a construction would be harsh indeed, especially when the means which caused his injury was furnished for his transportation by his employer. It would be at variance with the scheme and object of the Compensation Act and in conflict with the construction thereof announced in this State and elsewhere. *Friebel v. Chicago City Ry. Co.,* 280 Ill. 76 [16 N. C. C. A. 390], and cases cited.

What has been said disposes of the other questions raised and the judgment of the Circuit Court is affirmed.

*Affirmed.*