The Hon. Henry L. Myers,
The Hon. Albert P. Stark,
The Hon. John A. Matthews,
The Hon. Albert J. Galen,
} Associate Justices.

---

NICHOLSON, Appellant, *v.* ROUNDUP COAL MINING CO. et al., Respondents.

(No. 6,106.)

(Submitted April 26, 1927. Decided June 7, 1927.)

[257 Pac. 270.]

*Master and Servant—Workmen's Compensation—Burden of Proof — "Industrial Accident" — What may Constitute — Appeal—Trial de Novo—Findings.*

Workmen's Compensation—Appeal to District Court—Failure of Court to Make Findings—When Claimant cannot Complain.
 1.  Claimant under the Workmen's Compensation Act cannot, under section 9369, Revised Codes 1921, predicate error upon the court's failure to make findings on the trial of his cause on appeal from an order of the Industrial Accident Board, in the absence of a request for such findings.
Same—Appeal—Findings of Industrial Accident Board not Conclusive on Appeal Where Cause Tried De Novo.
 2.  The rule that the findings of the Industrial Accident Board cannot be interfered with by the trial court on appeal if there is

any evidence to support them does not apply to decisions on questions of law, and has application only where the appeal is determined upon the certified record made by the board; hence is inapplicable where the case is tried de novo and additional testimony is received showing conditions differing from those presented to the board.

Same—Burden of Proof.

3. A claimant for compensation under the Workmen's Compensation Act has the burden of proving that the injury (or death) entitling him thereto resulted from (a) an industrial accident (b) arising out of and (c) in the course of the employment, and unless all three of these necessary elements are proved by a preponderance of the evidence, no liability rests upon the employer, operating under plan 1 of the Act, to pay compensation.

Same—Rejection of Claim by Board on Ex Parte Affidavits of Physicians Held Erroneous.

4. *Held*, that the Industrial Accident Board erred in rejecting a claim for compensation for the death of a coal miner on the ex parte affidavits of two physicians to the effect that they found from an autopsy that deceased died from heart disease and that the court erred in dismissing the appeal; that the question as to the cause of death was one of fact to be determined from all the surrounding circumstances, and that the expert opinion of a third physician based upon a proper hypothetical question that death was due to shock was of greater value than the affidavits incorporated in the answer of defendant, the claim being rejected without a hearing.

Same—When Workman Entitled to Compensation as for Industrial Accident.

5. To entitle a workman to compensation as for an industrial accident, he must have been exposed by his employment to more than the normal risk to which the people of the community generally are subject, otherwise his injury cannot be said to arise out of his employment.

Same—Negligence of Employer not Essential to Recovery of Compensation—Contributory Negligence and Assumption of Risk not Available Defenses.

6. Under the provisions of the Workmen's Compensation Act, negligence of the employer is not an essential element of his liability for injuries sustained by the employee arising out of his employment, nor are the defenses of contributory negligence and assumption of risk available to the employer in avoidance of compensation.

Same—Death of Miner Suffering from Heart Disease, Caused by Shock to System on Coming in Contact With Intensely Cold Air in Air Course, Held Industrial Accident.

7. *Held*, that the death of a coal miner who was predisposed to heart disease, from shock while coming from work in the mine in which the temperature was very high and passing through an air course into which ice-cold air was being forced by means of a fan, rendering the temperature therein very low, was due to an "industrial" accident arising out of and in the course of his employment.

3.  See 28 **R. C. L.** 812.
5.  See 28 **R. C. L.** 804.
7.  Death from heart disease, see note in 19 **A. L. R.** 110.

**Same—Accident on Way.to or from Work on Premises of Employer Held to Arise Out of and in Course of Employment.**

8.  Where an industrial accident occurs while an employee is going to or from work on the premises of his employer and using ways of ingress and egress furnished by the latter, without deviation for purposes of his own, the injury suffered by reason of the accident will be held to arise out of and in the course of his employment.

**Same—Disease Aggravated or Accelerated by Accident No Bar to Compensation.**

9.  Though death or injury resulting from disease and not proximately caused by an accident arising out of and in the course of an employment is not compensable under the Workmen's Compensation Act, the fact that the employee at the time was suffering from disease does not preclude compensation if the disease was aggravated or accelerated by the accidental injury.

**Same—Conversion of Monthly Payments into Lump Sum Payment—When Permissible.**

10.  Under section 2926, Revised Codes 1921, the authority of the Industrial Accident Board to convert the monthly payments provided for by the Workmen's Compensation Act into a lump sum payment can only be exercised upon the written application of the injured workman or his beneficiary; hence in the absence of such application the board is limited to payment of compensation monthly.

---

[1]   Workmen's Compensation Acts, C. J., sec. 132, p. 126, n. 75 New.
[2]   Workmen's Compensation Acts, C. J., sec. 126, p. 121, n. 33; sec. 127, p. 122, n. 40; sec. 128, p. 123, n. 51.
[3]   Workmen's Compensation Acts, C. J., sec. 54, p. 65, n. 21; sec. 112, p. 115, n. 26.
[4]   Death, 17 C. J., sec. 169, p. 1306, n. 89.
[5]   Workmen's Compensation Acts, C. J., sec. 53, p. 62, n. 99 New; sec. 64, p. 73, n. 79, p. 74, n. 85 New.
[6]   Workmen's Compensation Acts, C. J., sec. 4, p. 7, n. 25, p. 7, n. 31 New; sec. 53, p. 62, n. 99 New.
[7]:  Workmen's Compensation Acts, C. J., sec. 63, p. 73, n. 76.
[8]   Workmen's Compensation Acts, C. J., sec. 68, p. 78, n. 2, 4.
[9]   Workmen's Compensation Acts, C. J., sec. 58, p. 69, n. 47; sec. 63, p. 73, n. 76.
[10]   Workmen's Compensation Acts, C. J., sec. 98, p. 102, n. 86, p. 103, n. 97, 98.

*Appeal from District Court, Musselshell County, in the Fifteenth Judicial District; Robert C. Stong, a Judge of the Thirteenth District, presiding.*

PROCEEDINGS under the Workmen's Compensation Act by Mae Nicholson, compensation claimant, for the death of her husband, George W. Nicholson, opposed by the Roundup Coal Mining Company, the employer. From an order of the dis-

---

9.  Pre-existing physical condition of employee which causes or contributes to injury or death, see note in 19 A. L. R. 95.

trict court dismissing the appeal and affirming an order of the Industrial Accident Board denying an award, claimant appeals. Reversed and remanded, with direction to enter judgment for claimant.

*Mr. Chas. F. Huppe, Mr. Timothy Nolan* and *Mr. Harlow Pease,* for Appellant, submitted a brief; *Mr. Pease* argued the cause orally.

Death from extreme cold or heat incident to particular employment is an industrial accident: *Nikkiczuk* v. *McArthur,* 9 Alberta L. R. (Eng.) 513; *Walsh* v. *River S. Co.,* 41 R. I. 490, 13 A. L. R. 956, 103 Atl. 1025 (death of fireman in boiler-room from heat exhaustion is accident within the Act, not disease); *Lane* v. *Horn & Hardart Baking Co.,* 261 Pa. 329, 13 A. L. R. 963, 104 Atl. 615 (heat prostration of lunch-counter attendant, due to heat of general atmosphere in working place, is injury by accidental means); *State ex rel. Rau* v. *District Court,* 138 Minn. 250, L. R. A. 1918F, 918, 164 N. W. 916 (sunstroke of worker on street where moist sand aggravated effect of sun is compensable accident); *State ex rel. Nelson* v. *District Court,* 138 Minn. 260, L. R. A. 1918F, 921, 164 N. W. 917 (freezing of janitor's limb while shoveling snow in severe cold is accident arising out of employment); *Larke* v. *John Hancock Ins. Co.,* 99 Conn. 303, L. R. A. 1916E, 584, 97 Atl. 320 (frost-bite, erysipelas and death of insurance agent, from driving long distance in cold is injury arising out of employment); *McManaman's Case,* 224 Mass. 554, 113 N. E. 287 (frost-bite of hand suffered by longshoreman unloading vessel arises out of employment); *Ismay* v. *Williamson,* 24 Times L. R. (Eng.) 881 (marine worker suffered heat stroke from working near furnaces of vessel, injury arises out of employment); *Maskery* v. *Shipping Co.,* 7 B. W. C. C. 428 (Eng.) (engineer of ship in tropics, heat stroke and subsequent death, is accident arising out of employment); *City of Joliet* v. *Industrial Com.,* 291 Ill. 555, 126 N. E. 618 (engineer suffered heat stroke from excessive heat of working place, accident

arising out of employment) ; *Ahern* v. *Spier*, 93 Conn. 151, 105 Atl. 340 (sunstroke of coal shoveler arises out of employment; special attention asked to the reasoning of this case) ; *LaVeck* v. *Parke, Davis & Co.*, 190 Mich. 604, L. R. A. 1916D, 1277, 157 N. W. 72 (cerebral hemorrhage of one suffering from arterio-sclerosis, produced by working in hot room, accident arising out of employment; situation very close to present case).

We anticipate a possible contention that the exhaustion from the effort of forcing a way against the air current was a cause of death, and that this does not constitute an accident. This contention we dispose of by authorities holding that even where exhaustion from overexertion is the chief cause of death, it is an accident within the Act. (*Crosby* v. *Thorp-Hawley & Co.*, 206 Mich. 250, 6 A. L. R. 1253, and case note at p. 1256, 172 N. W. 535.)

As opposed to the contention that the heart affection brings the case without the domain of "accident," we cite: *Patrick* v. *Ham Co.*, 119 Me. 510, 13 A. L. R. 427, 111 Atl. 912; *Mc-Ardle* v. *Swansea Trust*, 8 B. W. C. C. (Eng.) 489; *Winter* v. *Atkinson-Frizelle Co.*, 37 N. J. L. J. 195; *In re Brightman*, 220 Mass. 17, L. R. A. 1916A, 321, 107 N. E. 527; *Van Keuren* v. *Devine*, 179 App. Div. 509, 165 N. Y. Supp. 1049; *Casper Cone Co.* v. *Industrial Com.*, 165 Wis. 255, L. R. A. 1917E, 504, 161 N. W. 784; *Indian Creek Co.* v. *Calvert*, 68 Ind. App. 474, 119 N. E. 519; *In re Bowers*, 65 Ind. App. 128, 116 N. E. 842; *Indianapolis Abattoir Co.* v. *Coleman*, 65 Ind. App. 369, 117 N. E. 502; *Peoria Terminal Ry. Co.* v. *Industrial Board*, 279 Ill. 352, 116 N. E. 651; *Haskell & Barker Car Co.* v. *Brown*, 67. Ind. App. 178, 117 N. E. 555; *Southwestern Ins. Co.* v. *Owens* (Tex. Civ. App.), 198 S. W. 662; *Re Mooradjian*, 229 Mass. 521, 118 N. E. 951 (this is an "indoor" heat case, with heart weakness concurring, an exact analogy with the present facts) ; *Cook* v. *New York Central*, 180 App. Div. 918, 166 N. Y. Supp. 1090; *State ex rel. Jefferson* v. *Court*, 138 Minn. 334, 164 N. W. 1012; *Mansfield Engineering Co.* v. *Winkle*,

77 Ind. App. 237, 133 N. E. 390; *Clark* v. *Lehigh Valley Coal Co.*, 264 Pa. 529, 107 Atl. 858; *Treasure* v. *Cardiff Colliers*, 13 B. W. C. C. (Eng.) 28; *Trodden* v. *McLennard*, 4 B. W. C. C. (Eng.) 190; *Utilities Coal Co.* v. *Herr*, 76 Ind. App. 312, 132 N. E. 262; *Madden's Case*, 222 Mass. 487, L. R. A. 1916D, 1000, 111 N. E. 379; *Doughton* v. *Hickman*, 6 B. W. C. C. (Eng.) 77. In all the cases where pre-existing disease was present and compensation was denied, two fact findings are always present: (1) That the disease was not accelerated by the accident, and (2) that the disease itself was capable in its unaided course of producing the injury or death, and did solely produce it.

*Mr. A. G. McNaught*, for Respondents, submitted a brief and argued the cause orally.

The burden of proof, of course, rests upon the claimant to establish by a preponderance of the evidence that the injury or death resulted from (1) an industrial accident; (2) arising out of and (3) in the course of the employment (*Wiggins* v. *Industrial Acc. Board*, 54 Mont. 335, Ann. Cas. 1918E, 1164, L. R. A. 1918F, 932, 170 Pac. 9), and unless these three necessary elements are so proved, no liability rests on the respondents. (*Wirta* v. *North Butte Mining Co.*, 64 Mont. 279, 30 A. L. R. 964, 210 Pac. 332; 1 Honnold on Workmen's Compensation, 464 et seq.)

It will be observed that the word "accident" is not used in the Workmen's Compensation Law in the sense that an accident calls for compensation, but only that an "injury" resulting from an accident shall be so compensated. It is necessary, then, for us to determine whether or not an injury was sustained by the deceased, George Nicholson, and if so, was it the result of an accident. Not every injury is to be compensated but only such injuries as are the result of an industrial accident arising out of and in the course of the employment. Therefore, if it appears that no accident occurred, then, even though there was an injury, it does not come

within the scope of the Workmen's Compensation Law. Further, there must be not only an injury resulting from the accident, but the accident must have occurred in the course of the employment and must have arisen out of the employment. In other words, all three of these elements must enter into the case. (*Wirta* v. *North Butte Min. Co.*, supra.)

The cases cited by appellant in her brief, we submit, are not in point. We have endeavored to run down every case cited by the appellant, and each one which is available to us contains an element which does not enter into the case at bar, that is, the presence of an accident. We agree with counsel that the mere fact that there may have been a predisposition to an injury does not relieve the employer from liability, but we cannot agree that when this predisposing condition reaches a point where it, of itself, proves fatal, the employer is liable, even though the death occurs on his premises and during the hours of work, unless the death was brought about by some accident. The cases of heat prostration and freezing cited by appellant no doubt contain good law, but are not applicable to the case under consideration, for in every one of those cases which we have been able to read it will be found that the prostration or death occurred while the employee was performing his usual work. For instance, if Nicholson, while lifting and attempting to load a heavy piece of coal, had been stricken, and the finding of the board had been that he died as a result of the exertion incident to his work, the finding would perhaps not be disturbed. But in the case at bar, Mr. Nicholson had finished his day's work and was merely walking from the mine in a path which had been used by himself and others day after day for years. when he dropped dead. The autopsy disclosed that the heart was affected in such a way that his death might have occurred at any time, regardless of what he was doing at the time it happened. Not one case has been cited by appellant, so far as we have been able to determine, which is in point, the nearest being the case of *Crosby* v. *Thorpe-Halley Co.*, 206 Mich. 250, 6 A. L. R. 1253, 172 N. W. 535. There is a distinction, however, in the *Crosby Case* from the case at

bar in that there was an unusual exertion on the part of the employee, necessarily arising out of his employment, which resulted in the injury. Crosby was a traveling salesman and while interviewing a customer was delayed so that it was necessary for him to run in order to catch his train. The exertion from running and carrying his heavy sample cases brought on paralysis. There was an unusual exertion, unforeseen, unexpected and undesigned, but no such facts exist in the present case. Mr. Nicholson was calmly and deliberately walking out of the mine as he did every day, and as did all the other employees leaving the mine at that time of day, and without any undue exertion came to his death.

In the case of *Feder* v. *Iowa State Traveling Men's Assn.*, 107 Iowa, 538, 70 Am. St. Rep. 212, 43 L. R. A. 693, 78 N. W. 252, it was held that death resulting from a ruptured artery was not accidental when the rupture occurred while the insured was reaching from a chair to close a window, did not slip or· fall or lose his balance, and nothing unforeseen occurred except the bursting of an artery.

In the case of *Stombaugh* v. *Peerless Wire Fence Co.*, 198 Mich. 445, 7 A. L. R. 1617 (note), 164 N. W. 537, it was held that where an employee had heart disease so that an exertion might cause a rupture, the bursting of the wall of an auricle was not an accidental injury, it appearing that it occurred while he was lifting heavy rolls in the ordinary course of his work.

An employee is not entitled to compensation for a condition resulting from a pre-existing heart disease, and not proximately caused by an accident or personal injury arising out of and in the course of the employment. (*Springfield Dist. Coal Min. Co.* v. *Industrial Com.* (1921), 300 Ill. 28, 132 N. E. 752.)

If an accident occurred, it did not arise out of employment. We assume now, for the sake of this argument, that an accident did occur, and that necessary element exists in this case, nevertheless we submit that the case is not compensable because the accident did not arise out of the employment. This court has considered this phase of the law in the case of *Wiggins* v. *In-*

*dustrial Acc. Board,* 54 Mont. 335, Ann. Cas. 1918E, 1164, L. R. A. 1918F, 932, 170 Pac. 9, hereinbefore cited. The late Justice Holloway, speaking for the court in the *Wiggins Case,* lays down the rule that in order to constitute an arising "out of" the employment, it is sufficient to say that if by reason of the nature of the employment itself or the particular conditions under which the employment is pursued, the workman is exposed to a hazard peculiar to the employment under the circumstances, then the injury arises "out of" the employment, or, stated in different terms, the workman must have been exposed by his employment to more than the normal risk to which the people of the community generally are subjected.

What do the facts in the instant case disclose? That the temperature of the airway was the same as the temperature on the outside of the mine, therefore the deceased was in exactly the same situation as everyone else who was abroad that day, excepting perhaps the facing of a breeze of approximately eleven miles per hour, which was not an unusual hazard but one which had been experienced daily for years.

In the *Wiggins Case,* just mentioned, and cited in appellant's brief, the deceased came to his death by reason of a stroke of lightning. He had been working for a county on a road grader and it was contended that his position on the steel grader exposed him to a peculiar hazard from lightning. The district court sustained the plaintiff's contention but was reversed by the supreme court on the ground that the deceased was in no greater peril than others in the same locality. We submit that the *Wiggins Case* is peculiarly in point with our contention in the case at bar in that very particular, viz., that the deceased in the instant case was in exactly the same situation as regard to hazard as others in that locality.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment dismissing plaintiff's claim for compensation for the death of her husband.

The Roundup Coal Mining Company operates a coal mine in Musselshell county, and is bound by plan No. 1 of the Compensation Act (Rev. Codes 1921, sec. 2816 et seq.). On December 18, 1924, George W. Nicholson, an employee of the company, dropped dead in the "main air course" of the mine while passing from the premises after his day's work. Two physicians and surgeons performed an autopsy on the body and thereafter testified at an inquest held to determine the cause of death. In due time Mae Nicholson, wife of the deceased and a "beneficiary" entitled to compensation if the case comes within the provisions of the Act, filed her claim with the Industrial Accident Board and therein alleged that Nicholson "was killed in the course and during his employment   *   *   * as a result of an accident in the mine." This allegation was denied by answer filed, and the company therein affirmatively alleged that the cause of death was heart failure, "a natural cause," and, with the answer, submitted the joint affidavit of the doctors who performed the autopsy, in which they state "they found his heart in a diseased condition, known as tricuspid stenosis, which they believe caused death," and an informal statement, by the miner who discovered his body, in which he says: "There was no fall of roof nor anything out of the ordinary at the place where I found Nicholson. It was cold in the manway, which is the air intake of the mine, because it was cold outside." The manager of the company supplemented these statements by letter addressed to the board, in which he added the following to the doctors' statement: "This particular disease makes the victim liable to death at any moment and anywhere, so Nicholson was just as likely to have died in his own home as in the mine." He then quoted the miner's statement, and concluded: "Consequently there could have been no accident of any sort to bring on the death."

On this showing the board refused to grant the claimant a hearing, held that there was no "industrial accident" and entered its order disallowing and dismissing the claim. The claimant moved for a rehearing, and, in support thereof, filed with the board a

transcript of the testimony taken at the coroner's inquest. This motion was denied, and thereafter the claimant appealed to the district court, whereupon all of the files and records of the board, including correspondence had, were duly certified to the court, and, on the trial, the court permitted each party to introduce oral testimony on all questions involved, so that the court had before it a complete case, independent of the showing made to the board.

At the close of the trial, the court took the matter under advisement, and thereafter entered an order in which, without making findings of fact, it declared that "the evidence does not preponderate against the findings of the Industrial Accident Board"; dismissed the appeal and affirmed the order of the board, attempting to justify this action by the statement that "the power and duty of the court in appeals of this nature are regulated by sections 2960 and 2961 of the Revised Codes of Montana. The case of *Willis* v. *Pilot Co.*, 58 Mont. 34, 190 Pac. 124, holds that the power of the district court is that of review rather than that of retrial. The case of *Morgan* v. *Butte etc. M. Co.*, 58 Mont. 641, 194 Pac. 496, lays down the rule: 'In hearings in these cases, the findings and decisions of the board cannot be reversed where there is any evidence to support them.'"

1. The claimant complains of the court's failure to make and [1]   file findings of fact, but, as she did not request findings, as required by the statute, she is in no position to predicate error upon this omission. (Sec. 9369, Rev. Codes 1921.)

2. Claimant's first and third assignments of error are di-[2]   rected against the court's method of disposing of her appeal. The first charges that the court adopted "a rule incompatible with the status of the case as the Industrial Accident Board left it by its decision, viz., the rule of affirming existing findings of fact, none of which were made by the board"; and the third asserts that the court "in effect refused to take jurisdiction of the cause on appeal from the board and determine the law and the facts."

Each of these assignments has merit. The board held no hearing and, in effect, disposed of the claim as on a motion for judgment on the pleadings on questions of law, although the pleadings raised an issue as to whether decedent's death was caused by accident or resulted from natural causes, and, in order to arrive at its decision, the board must have taken into consideration the ex parte showing made by the company. The board's decision on a question of law stands in a very different situation from its findings of fact based on evidence received at a hearing. The rule invoked does not apply to decisions on questions of law, and has application only to those appeals determined on the ''cold record'' certified to the court by the board, as pointed out in the *Morgan Case* referred to; it is not controlling in cases in which the court permits additional testimony, and has no application when the additional testimony shows fact conditions differing from those presented to the board. On all appeals in which the court permits such additional testimony, the trial is a re-examination in the nature of a review, so far as the record made before the board is concerned, but, as the additional testimony was not before the board, the trial is de novo as to such additional evidence. (*Dosen* v. *East Butte Copper Min. Co.*, 78 Mont. 579, 254 Pac. 880; *Novak* v. *Industrial Acc. Board*, 73 Mont. 196, 235 Pac. 754.) The court should have considered all of the evidence adduced, and determined the questions presented on appeal according to the law and the evidence.

3. It is next contended that the judgment of dismissal was not warranted by the evidence. The board found that there was nothing in the testimony before it to show that there was ''an accident of any kind, in the common understanding of the term.'' Whether this statement is warranted by the record or not is now immaterial, as the court had much additional testimony before it; in fact, the trial was practically de novo in toto. Section 2961, Revised Codes of 1921, declares that ''if the court shall find from such trial, as aforesaid, that the findings and conclusions of the board are in accordance with

79 Mont.—24

either the facts or the law, or that they ought to be other or different than those made by the board, or that any finding and conclusion, or any order, rule, or requirement of the board is unreasonable, the court shall set aside such finding, conclusion, order, judgment, decree, rule, or requirement of said board, or shall modify or change the same as law and justice shall require, and the court shall also make and enter any finding, conclusion, order or judgment that shall be required, or shall be legal and proper in the premises.''

There is no substantial conflict in the evidence, the material portions of which are as follows: George W. Nicholson had worked as a miner in the mines of the Roundup Mining Company for a period of years prior to his death, at which time he was a man forty-two years of age, weighing 166 to 168 pounds, unusually strong and athletic and, apparently, in robust health. On December 18, 1924, he worked in the mine from 7 A. M. to about 2:30 P. M., or some time prior to the end of the usual shift which changed at 3:15 P. M. As he had finished his work for the day, he was at liberty to go home. He wore a stocking cap over his working helmet and wore a mackinaw coat; was dressed for cold weather. In the outer air the thermometer stood at twenty-eight degrees below zero and the temperature within the ''air course'' was the same as that outside, while the temperature in the workings of the mine stood at 80 to 100 degrees higher than that on the outside and in the air course. With a companion, Nicholson traversed the main haulage course to a point approximately 500 feet from the surface, when they entered the air course through a communicating door. The companion stopped to button his outer garments against the cold, while Nicholson proceeded toward the surface; the companion stumbled upon Nicholson's body a short distance from the exit. This ''air course'' is a tunnel approximately six and one-half feet high by six feet wide, paralleling the ''main haulage course'' or exit tunnel from the mine, and has an upward grade from the workings to the surface of four or five degrees; doors communicate between

the two at intervals. . At the exit of this "air course," a large fan is installed which, when in operation, forces 72,000 cubic feet of air per minute into the mine, and this air traverses the air course at the rate of approximately 1,000 feet per minute.

At the periods of the day when shifts are changed, the company furnishes the men with means of transportation from the mine, and then the fan is shut down so that the men may traverse the air course without encountering the usual draft of air down the course, but those who complete their day's work before the change of shifts are permitted to leave the mine and must pass out through the air course with the fan running, as it would be dangerous, if not impossible, to traverse the "haulage course" in which cars pass to and fro. This practice has been followed and permitted for years, and, according to the state mine inspector, this usage is in accordance with good practice in such mines. While the temperature within the air course is the same as that outdoors, owing to the draft forced through the passage by the fan, it seems to be much colder within the passage,—as one witness expressed himself: "It makes it seem twice as cold." Many miners, called as witnesses, testified that on the day of Nicholson's death, and the day previous thereto, when it was but eight below outside, the cold and the draft within the course were almost unbearable, and they were greatly relieved on reaching the outer air. On this subject the testimony is all one way, varying only as the expressions, used by some ten witnesses, differ. These witnesses attempted to describe their feelings and sensations while in the air course. Thus Davis, the state mine inspector who had worked in the mine, stated that "a passage through the air course" was "a continuous struggle"; that "the sensation I felt in my body when going through the air course under the conditions stated, was a cold clammy feeling in the chest, and you were possessed with a sense of pending disaster if you didn't get out of there quickly." One Wine testified: "It was awful hard to breathe; you couldn't take no

wind in there; that wind was blowing clear through you it seemed like. * * * It seemed like it would choke you; * * * had quite a bit of feeling of exhaustion, fatigue; * * * my heart was beating faster.'' Norman Nicholson declared: ''In going into the air course you struck the air going down; * * * it took your breath. * * * The further you went, the worse it got; * * * you choke and gasp for breath; sometimes you have to turn around in order to get it, * * * glad to get out.'' Sam McKee, testifying as to the day before Nicholson's death, said: ''I first entered the air course and it kind of took your breath. I traveled on up to the second west, and as I went on up I got exhausted, choked, gasped for breath, and got weak in the knees and shaky. * * * I had to quit it got so cold.'' One Fred Nicholson, a cousin of deceased, explained: ''You have to protect yourself with your hands, if you can; put your hand over your mouth and nose. That kind of cuts the air and the pressure of the air, the cold air.'' James Moffitt declared: ''The feeling you have is numb all over; * * * you try to get out as soon as possible.'' J. W. Brown testified that in passing through the air course his heart beat so hard he could almost hear it and his knees got weak.

Nicholson negotiated all but the final thirty or forty feet of this passage, wherein ''the further you went, the worse it got,'' when his diseased heart ceased to function, and he dropped dead. ''Stenosis'' is defined as ''a stricture or narrowing of a duct or canal.'' (Doiland's Medical Dictionary.) The heart condition described consists of a deposit of a chalk-like substance on the tricuspid valve of the heart which tends to contract the opening and diminish the flow of blood; when this deposit becomes sufficient to prevent the flow of blood, death follows. While Drs. Firey and Bressenden stated in their ex parte affidavit that they ''believe'' death was caused by the heart disease, testifying at the inquest, Dr. Firey stated that he did not assert that the heart condition caused death, but that, ''in the absence of any other known cause,'' he ''as-

signed'' it as the cause of death.  He testified that a man in Nicholson's condition might drop off at any time or might live on indefinitely.  Pressed for a direct answer, he would not say that the heart condition was the proximate cause of death or that shock by sudden exposure to the cold draft might not have been the proximate cause.  In answer to a question he stated: ''I think a more likely cause of death was nembolism of the pulmonary artery.  I mean by that that a clot of blood or a fragment had obstructed the circulation in the pulmonary artery.''  Asked, ''Would that be a result of the condition of the heart?'' he answered, ''A possible result.''  Dr. Bressenden's testimony at the inquest did not differ materially from that of Dr. Firey.

Both of the doctors were called by the defendant on the trial.  There Dr. Firey testified: ''I found no marked condition of stenosis existing in Nicholson;  *  *  *  that was all we found to indicate other than a normal, healthy heart or any other organ.''  There was therefore no marked narrowing of the blood passage or diminution of the flow of blood.  He stated that he thought the principal cause .of death was heart disease, but admitted that the change in temperature, exertion, exposure, etc.; ''might have had some influence''; that ''without those conditions existing at that particular time, I think he might have lived;  *  *  *  a man might have lived for an indefinite period of time with the condition of heart we found.''  He further stated that there was more probability of a man in Nicholson's condition dropping off when exposed to extremes causing exhaustion, than of a normal man doing so.  Again Dr. Bressenden agreed with Dr. Firey.

Dr. Donahue, of Butte, was called by plaintiff, and, in answer to a hypothetical question based upon all of the evidence, to which he had listened, gave it as his opinion as an expert that ''Nicholson's death was caused from shock causing inhibition of the heart,'' to which his heart affection was a ''predisposing condition.''  He insisted throughout his direct and cross-examination that shock was the cause of the death, and

that death could have resulted therefrom, under the circumstances, even though Nicholson had had a normal heart. The doctor explained his statement at some length, and gave instances of like sudden death by shock; one example being a fall into cold water.

Would the foregoing evidence, had it been considered by the court, have warranted the judgment rendered?

4. Section 2911, Revised Codes 1921, in so far as applicable [3] here, reads: "Every employer who shall become bound by and subject to the provisions of compensation plan number one, * * * shall be liable for the payment of compensation in the manner and to the extent hereinafter provided, to an employee who has elected to come under this Act, and who shall receive an injury arising out of and in the course of his employment, or, in the case of his death from such injury, to his beneficiaries," etc. "Injury," as here used means and includes death resulting from injury (sec. 2864), and "refers only to an injury resulting from some fortuitous event, as distinguished from the contraction of disease" (section 2870).

The phrase, "injury arising out of and in the course of his employment," means that the injury or death resulted from an industrial accident arising out of and in the course of the employment (*Wiggins* v. *Industrial Acc. Board,* 54 Mont. 335, Ann. Cas. 1918E, 1164, L. R. A. 1918F, 932, 170 Pac. 9); while the word "fortuitous," used in section 2870, means "happening by chance or accident; coming or occurring unexpectedly or without known cause; chance; accident" (Webster's New International Dictionary), and therefore the "fortuitous event" referred to is synonymous with "industrial accident."

5. The burden is therefore upon the claimant to prove injury, as above defined, resulting from (1) an industrial accident, (2) arising out of and (3) in the course of the employment, and, as these terms are used conjunctively and not disjunctively in the statute, unless all three of these necessary elements are proved by a preponderance of the evidence, no lia-

bility rests upon the employer to pay compensation. (*Wiggins* v. *Industrial Acc. Board,* above; *Wirta* v. *North Butte Mining Co.,* 64 Mont. 279, 30 A. L. R. 964, 210 Pac. 332; 1 Honnold on Workmen's Compensation, 464.)

6. The board held that "the only competent evidence as to [4] the cause of death that has been produced or can be produced is the sworn statements of the doctors who performed the autopsy," and, by its method of disposing of the claim, the court, in effect at least, adopted this ruling. The ruling was clearly erroneous. The question as to the cause of death was one of fact to be determined from all the surrounding circumstances and the expert opinion of a physician and surgeon, based on a proper hypothetical question, is always competent as to that question. (*Walsh* v. *River Spinning Co.,* 41 R. I. 490, 13 A. L. R. 956, 103 Atl. 1025.) With the evidence as to the surrounding circumstances before him, Dr. Donahue was in a more advantageous position to give an intelligent answer to the question than were the doctors who performed the autopsy at the time they made the statement referred to by the board, and, on being questioned with reference to the surrounding circumstances, their testimony did not rebut that of Dr. Donahue.

7. Was there a violation of a duty owing by the employer to the employee? The employer is not liable for compensation under the Act except in those instances where the right is expressly granted (sec. 2839), but the employer is required to furnish his employee with a reasonably safe place to work, which "means that the place of employment has been made as free from danger to the life or safety of the employee as the nature of the employment will reasonably permit" (sec. 2860); and the rule is that "the workman must have been exposed [5] by his employment to more than the normal risk to which the people of the community generally are subject, in order that his injury can be said to arise out of his employment" (*Wiggins* v. *Industrial Acc. Board,* above).

Now the evidence warrants a finding that Nicholson's death resulted from shock as a result of passing from the high temperature of the workings to the low temperature of the air course, to which result of shock he was "predisposed" by his heart condition. Had the fan not been in operation at the time, the conditions in the passage would not have differed materially from those outside, and there would have been no liability. True, Nicholson was not compelled by his duty to pass out at that time; he could have waited until the change of shift within an hour, and in this he may be said to have been negligent or to have assumed the risk; but the defenses of contributory negligence and assumption of risk are not available under the Compensation Act. (Sec. 2836.) The greater risk to which Nicholson was subjected was caused by the act of the employer in running the fan at a time when employees were passing, and were permitted to pass, through the air course, and this "place of work" could have been made less dangerous by either stopping the fan at a time when any employee was permitted to so pass out of the workings, or by requiring all workmen to remain in the mine until the change of shift when the fan was stopped; the failure of the employer so to do, therefore, was a breach of its duty to make the place of work "as free from danger  *  *  *  as the nature of the employment will reasonably permit."

However, not only are contributory negligence and assump-
[6]    tion of risk no defenses under the Compensation Act, but negligence on the part of the employer is not an essential element of liability, and the failure to discharge a duty owing to the employee is important only in that it shows that, owing to the nature of the employment and the construction of the place of work, the employee was subjected to a greater risk and danger than were other members of the community by reason of acts or omissions which it was within the power of the employer to have avoided.

Thus it is said in *Milwaukee* v. *Industrial Com.*, 160 Wis. 238, 151 N. W. 247, that the term "proximate cause," as used

in our Compensation Act, must be given a different meaning in these cases than is given to them in the ordinary personal injury cases, stating:

"Proximate cause as applied to negligence law has, by definition, included within it the element of reasonable anticipation. Such element is a characteristic of negligence, not of physical causation. As long as it was necessary to a recovery to have a negligent act stand as the cause of an injury, it did no harm to characterize causation in part at least in terms of negligence. But when, as under the Compensation Act, no act of negligence is required in order to recover, the element of negligence, namely, reasonable anticipation, contained in the term 'proximate cause' must be eliminated therefrom; and the phrase 'where the injury is proximately caused by accident,' used in the statute, must be held to mean caused in a physical sense, by a chain of causation, which, both as to time, place, and effect, is so closely related to the accident that the injury can be said to be proximately caused thereby. To incorporate into the phrase * * * all the conceptions of proximate cause in the law of negligence would be to lug in at one door what the legislature industriously put out at another."

8. Regardless of the fact that there was no accident "in the common understanding of the term," as declared by the board, does the evidence disclose an "industrial accident" within the meaning of the Compensation Act, arising out of and in the course of the employment?

In Dawbarn on Employers' Liability, fourth edition, page 100, it is said that "roughly speaking, accidents are divided into two great classes: (a) Accidents popularly known as such, such as railway accidents, breakdown of machinery, explosions, collisions, etc., where persons injured by them are spoken of as injured by accident; (b) accidents where there is no such external mishap, but where the man injures himself, as he would say, by accident, when he either strains a muscle, or ricks his back, or ruptures himself, or otherwise hurts himself in an unexpected manner."

These latter injuries are generally regarded as accidental injuries, and are "generally held fortuitous and unexpected events; in other words, accidents." (Boyd on Compensation Laws, sec. 458.)

The authorities, however, go much further than this in defining an "accident," as the term is used in Compensation Acts, and the rule is generally recognized that "if an employee, by reason of his duties, is exposed to a special or peculiar danger from the elements—that is, one greater than other persons in the community—and an unexpected injury is sustained by reason of the elements, the injury constitutes an accident arising out of and in the course of the employment, within the meaning of the Workmen's Compensation Acts." (Note to 13 A. L. R. 974, and cases cited.)

In the following cases the death or injury was declared to have resulted from an industrial accident within the meaning of the Compensation Acts: Death of a fireman in a boiler-room from heat exhaustion (*Walsh* v. *River Spinning Co.*, above); heat prostration of lunch-counter attendant due to overheated atmosphere (*Lane* v. *Horn & Hardart Baking Co.*, 261 Pa. 329, 13 A. L. R. 963, 104 Atl. 615); sunstroke of workman while working in sandy street, moist because of rain the night before, causing excessive humidity (*State ex rel. Rau* v. *District Court*, 138 Minn. 250, L. R. A. 1918F, 918, 164 N. W. 916); heat stroke suffered by engineer, induced by excessive heat in place of work (*Joliet* v. *Industrial Com.*, 291 Ill. 555, 126 N. E. 618); and many more cases of like nature cited in the above note, wherein it appeared that the employee was peculiarly subjected to the heat condition by reason of the nature or place of his employment. Of course, the same rule applies to injuries from freezing. (*McManaman's Case*, 224 Mass. 554, 113 N. E. 287; *Larke* v. *John Hancock Mutual Life Ins. Co.*, 90 Conn. 303, L. R. A. 1916E, 584, 97 Atl. 320; *State ex rel. Nelson* v. *District Court*, 138 Minn. 260, L. R. A. 1918F, 921, 164 N. W. 917; *Quick* v. *Ice Co.*, 195 App. Div. 676, 186 N. Y. Supp. 690.)

We recognize the fact that the line drawn by the decided

cases between those falling within and without the definition of an industrial accident often reaches the vanishing point, but in the case at bar, it seems clear that, by reason of his employment, Nicholson was, with his coemployees, placed in a position wherein he was, and they were, specially and peculiarly subject to a risk and danger not shared by members of the community generally, and that the condition in the air course on the day in question was such that even a perfectly healthy man might have succumbed to the shock. Had Nicholson, then, not been afflicted, as he was shown to have been, and had died as he did, his death would have been proximately caused by the shock, and it is immaterial that his fellow-workmen, who were likewise exposed, survived the shock. Thus it is said in *Nikkiczuk* v. *McArthur*, 9 Alberta L. R. (Eng.) 513: "It was because he was so employed that the applicant was exposed to the risk, and I see no reason for excluding his case from the words of the statute, because you can discover other people whose employment similarly exposed them. Upon that principle no man could recover if you could show that a group of other people were exposed in the course of their employment to similar risks. The man would have to be a *rara avis* indeed, on such a doctrine, before he could succeed."

9. In urging the question as to whether, if an accident did [8] occur, it arose out of the employment, counsel for the defendant company says: "The cases cited by the appellant are not in point, because in each of the cases the deceased was actually at work under circumstances which placed him in some peculiar hazard, and therefore the principle of law relied upon is not applicable."

We have already disposed of the question of peculiar hazard, and if, by the above statement, counsel intends to assert that, because Nicholson was not actually working at the time he met with the accidental injury causing his death, the above principle of law does not apply, the contention is without merit. The employer has control of the ways of ingress and egress within its property and leading to and from the place

of work, and it is universally held that, where an industrial accident occurs while an employee is going to or from work while on the premises of the employer and while passing over ways of egress and ingress furnished by the employer, without deviation for purposes of his own, an injury suffered by reason of the accident arose out of and in the course of his employment, as he was under the protection of, and using the things furnished him by, his employer. (*Moury* v. *Latham Coal & Min. Co.*, 212 Ill. App. 508, 18 N. C. C. A. 1034; *Holt Lumber Co.* v. *Industrial Com.*, 168 Wis. 381, 170 N. W. 366, 3 W. C. L. J. 549; *Rucker* v. *Read*, 39 N. J. L., 48; *Griffith* v. *Cole Bros. Co.*, 183 Iowa, 415, L. R. A. 1918F, 923, 165 N. W. 577; *Meyers* v. *Michigan Cent. Ry. Co.*, 199 Mich. 134, 165 N. W. 703; *International & Great Northern Ry. Co.* v. *Ryan*, 82 Tenn. 565, 18 S. W. 219.)

10. Does the fact that Nicholson had the heart affection [9] described bar his dependents from compensation when they would have been entitled thereto had he been in perfect health at the time of his death? The authorities answer the question in the negative.

Death or injury resulting from disease and not proximately caused by an accident or injury arising out of and in the course of the employment is not compensable (*Madden's Case*, 222 Mass. 487, L. R. A. 1916D, 1000, 111 N. E. 379; *Springfield Dist. Coal Min. Co.* v. *Industrial Com.*, 300 Ill. 28, 132 N. E. 752), but the fact that an employee was suffering from a disease or disability does not preclude compensation if the disease was aggravated or accelerated by an accidental injury which arose out of and in the course of the employment.

In 1 Honnold on Workmen's Compensation, page 302, the rule is declared, and supported by authorities, that "compensation losses are not made solely for the protection of the employees in normal physical condition, but for those also who are subnormal. * * * It follows that neither a congenital weakness nor a pre-existing disease will render noncompensable an injury received under conditions which would otherwise

make it compensable. But this does not, of course, dispense with the necessity that the injury shall have been actually caused by an accident or occurred in the course of the employment."

The decisions holding death or injury of persons suffering from disease compensable when proximately caused by an industrial accident, within the meaning of the Compensation Acts as herein defined, are multitudinous, and we will confine our discussion to those cases having to do with heart disease and conditions allied thereto. In this class of cases the English rule is that, "if it appears that the employment was one of the contributing causes, without which the accident which actually happened would not have happened, and if the accident is one of the contributing causes, without which the injury which actually followed would not have followed," an employee is entitled to compensation. The English Act provides for compensation for "injuries by accident." Under this provision and under the rule above quoted, it is held in *McArdle v. Swanson Harbour Trust*, 8 B. W. C. C. (Eng.) 389, 11 N. C. C. A. 175, that, where the employment involved the pulling of boxes weighing 200 pounds, and while so employed the employee fell dead, and a post-mortem disclosed that death was due to rupture of an aneurism, that the artery was in bad condition and the disease one of long standing and which was bound at some time to cause death, there was an accident arising out of the employment. The writer of the opinion said: "We have, as it seems to me, to deal with the rupture of the aneurism at the particular time at which it was ruptured."

In *Madden's Case*, above, the employee was a woman employed in a carpet factory, who had "a weak heart condition"; in pulling a carpet over a table in front of her she "felt something give way"; she was held to have suffered an injury arising out of and in the course of her employment. The court pointed out, however, that the Massachusetts Act differs from the English Act and that of a number of the states, in that it refers only to "personal injuries arising out of and in the

course of the employment,'' while the English Act provides for compensation for "personal injuries by accident." However, the fact conditions recited in the English case above, and in the *Madden Case,* are practically identical, and the result reached is the same.

In *Patrick* v. *J. B. Ham Co.,* 119 Me. 510, 13 A. L. R. 427, 111 Atl. 912, the supreme judicial court of Maine affirmed the decision of the Industrial Commission to the effect that the bursting of a blood vessel by the increased blood pressure resulting from the exertion of the employee in lifting a sack of grain was ''an accident'' within the meaning of the Workmen's Compensation Act, and it is said in the opinion: "That Patrick was suffering from diseased arteries predisposing him to cerebral hemorrhage * * * in a year or a week is immaterial. The question before the commission was whether the work that he was doing * * * caused the cerebral hemorrhage to then occur. If so, we think it was an accident arising out of and in the course of his employment."

In *Winter* v. *Atkinson Frizelle Co.,* 37 N. J. L. J. 195, the court said: "Suppose the deceased did have an aneurism of the aorta, and while assisting in the lifting of the iron plate * * * he fell and was found dead; it can reasonably be found * * * that the exertion * * * was too much for his diseased, enfeebled, or weakened condition, that it resulted in an accident to him, and that therefore he would be entitled to compensation. * * * Certainly there is persuasive force in the testimony sufficient for me to reasonably infer that the employment of Mr. Winter was one of the contributing causes to his death. Should I say that he died from heart trouble alone? I think not. * * * I could readily find from the testimony in this case that his employment contributed to his death; and this would not be a guess, but a deduction or inference reasonably gathered from all the facts in this case."

In *Indian Creek Co.* v. *Calvert,* 68 Ind. App. 474, 119 N. E. 519, it is said: "Assuming that decedent was afflicted with a

fatal malady certain to result in his decease sooner or later, and that such malady was a cause of decedent's death here, these facts alone are not sufficient to defeat appellee's claim. Such result would follow only in case his decease was in fact the result of his ailment progressing naturally and disassociated from any injury that he might have suffered by accident arising out of and in the course of his employment.''

In *Van Keuren* v. *Devine,* 179 App. Div. 509, 165 N. Y. Supp. 1049, the court declared that ''if an employee has a disease, and, having the same, receives an injury 'arising out of and in the course of the employment,' which accelerates the disease and causes his death, such death results from such injury, and the right to compensation is secured, even though the disease itself may not have resulted from the injury.''

So, where an electrotype finisher was found dead in a saloon where he had gone after his day's work, and medical testimony established that he was, at the time of his death, suffering from angina pectoris, caused by overwork and the climbing of many stairs throughout the previous twenty-one hours, it was held that death was due to an accidental injury occasioned by and in the course of his employment, and therefore compensable. (*McMurray* v. *Little & Ives Co.,* 3 N. Y. State Dept. Rep. 395.)

Death from heart trouble while pitching dust-laden alfalfa was held compensable in *Carroll* v. *Industrial Com.,* 69 Colo. 473, 19 A. L. R. 107, 195 Pac. 1097, as breathing the dust-laden air was the proximate cause of death, and death therefrom was unexpected and unintended.

It is not necessary to further cumber this opinion by quotations or citations. Under the great weight of authority, as the evidence clearly shows that Nicholson was subjected by his employment to the special and peculiar risk and danger of traveling, at the time of his death, against an artificial current of air sufficient to cause distress in a normal man, and possibly to have caused the death of such a one, and certainly to increase the burden upon the heart, and that, in the diseased

condition of Nicholson's heart, this special burden did in fact accelerate the disease and hasten the fatal termination, if not the sole proximate cause of death, his death resulted from an industrial accident arising out of and in the course of his employment, and demands the payment of compensation.

11. Under the provisions of section 2915, Revised Codes of 1921, on death claims the beneficiaries residing within the United States are entitled to "fifty per centum of the wages received by the employee at the time of his death," subject to a maximum allowance of $12.50 per week and a minimum of $6 per week, for a period of not exceeding 400 weeks. In 1925 this maximum was raised to $15 per week (Chap. 121, Sess. Laws 1925), but, as the accident and death occurred prior to the amendment, the provisions of the original Act will apply. It seems to us clear that Nicholson was receiving more than double this maximum at the time of his death, and therefore the claimant's allowance must be fixed at $12.50 per week.

By the provisions of the above section, the board is allowed discretion in fixing the total amount of compensation by regulating the period over which the payments shall extend, up to the maximum of 400 weeks, but, as the dependent claimant has three children to support, and it does not appear from the record that the burden upon her will be lightened within the full period of 400 weeks, there would seem to be no reason why the payments should not be extended for the full period permitted by the statute. These payments, while for the benefit of all of the beneficiaries—the wife and the children—are to be made to the "surviving spouse." (Sec. 2919.)

While the compensation is figured on a weekly basis, the payments are to be made monthly (sec. 2925), and may be converted, in whole or in part, into a lump sum payment, not exceeding the estimated value of the present worth of the deferred payments capitalized at five per cent per annum (sec. 2926); but the section further provides that "such conversion can only be made upon the written application of the injured workman, his beneficiary, or major or minor dependents, as

the case may be," etc. No such request was made, and therefore the only order which can be made at this time is that the plaintiff, as surviving spouse of George W. Nicholson, shall receive compensation for his death at the rate of $12.50 per week, payable monthly, for a period of 400 weeks.

The judgment is reversed and the cause remanded to the district court of Musselshell county, with directions to enter judgment in favor of the plaintiff and in conformity with these findings and conclusions.

*Reversed and remanded, with directions.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.