MURPHY, Respondent, v. INDUSTRIAL ACCIDENT BOARD, Appellant.

(No. 7,048.)

(Submitted November 16, 1932. Decided December 8, 1932.)

[16 Pac. (2d) 705.]

(1)

2

*Mr. L. A. Foot,* Attorney General, and *Mr. C. N. Davidson,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Davidson* argued the cause orally.

4

*Messrs. Molumby, Busha & Greenan,* for Respondent, submitted a brief; *Mr. Loy J. Molumby* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Everett J. Murphy made claim to the Industrial Accident Board for compensation for injury alleged to have been sustained on April 25, 1929, while working for the Broadwater Consolidated Mines, Incorporated, at Neihart. After a hearing the board denied his application. On his motion the board ordered a rehearing, which resulted in the taking of additional evidence and the making of a like order. Claimant then appealed to the district court of Cascade county, where the cause came on for trial on December 10, 1931, and on his motion the court heard additional testimony. The court, at the conclusion of the hearing, entered an order continuing the matter for thirty days to enable claimant to prepare findings. On December 24 the board filed a motion to reopen the case so as to afford it an opportunity to cross-examine

claimant's witnesses and to introduce testimony on its own behalf. The motion was supported by affidavit, showing that the board had not received notice of the hearing held on December 10. This motion was granted and the cause set down for hearing on January 21, 1932, at which time additional evidence was submitted by both parties. The court found for claimant and allowed compensation as for total permanent disability, and entered judgment accordingly. The board has appealed from the judgment.

The several specifications of error present the single question as to whether the evidence is sufficient to support the findings and judgment.

Where, as here, the court for good cause shown received ▮▮▮▮ additional evidence, as it was authorized to do under section 2960, Revised Codes 1921, and of which no complaint is made, we may assume that the board properly decided the case on the evidence before it. Upon the trial in the district court, if the matter is submitted on the record before the board, the hearing is in the nature of a review, but as to the additional evidence the trial is *de novo*. (Sec. 2960, supra; *Nicholson* v. *Roundup Coal Min. Co.*, 79 Mont. 358, 257 Pac. 270; *Dosen* v. *East Butte Copper Min. Co.*, 78 Mont. 579, 254 Pac. 880.) And where the court has received additional evidence not presented to the board, every presumption is in favor of the correctness of the court's decision. (*Mulholland* v. *Butte & Superior Min. Co.*, 87 Mont. 561, 289 Pac. 574.) And this court will not reverse the judgment of the district court unless the evidence clearly preponderates against it. (*Kerns* v. *Anaconda Copper Min. Co.*, 87 Mont. 546, 289 Pac. 563.) In weighing the evidence we bear in mind the rule, oft repeated, that the district judge who sees and hears the witnesses is in a better position than are we, and hence if there is substantial evidence in the record supporting the judgment, we will not disturb it.

The court found that the claimant, on April 25, 1929, was, and for about a month or six weeks prior thereto had been, employed as a miner by the Broadwater Consolidated Mines,

Incorporated, at Neihart, and that the company was operating under Plan 3 of the Workmen's Compensation Act; that prior to April 25, claimant was an able-bodied man, capable of doing manual labor, and for two years immediately prior to his employment by the Broadwater Consolidated Mines, Incorporated, had daily performed work in the open air; that during his employment with that company he commenced his work at about 6 P. M. each day; that the preceding shift was worked by other men and was usually finished at about 4 or 4:30 P. M., at which time these workmen set off blasts of powder in the mine, which gave off a volume of noxious and poisonous fumes and gases, and which by the time claimant and his fellow workmen started work, would be cleared from the mine by artificial or natural drafts of air; that on the 25th of April the employees of the preceding shift set off blasts of dynamite as late as 5 P. M., which was later in the day than usual, and in consequence the gases and fumes had not cleared when claimant and his fellow workmen came on duty in the mine; that claimant inhaled the gases and fumes and was made sick and given severe headaches; that the gases and fumes thus inhaled by claimant caused a severe bronchial irritation and vomiting, with accompanying severe coughing, to the extent of bringing up blood; that claimant was compelled to resort to medical attention; that upon examination it was found that he was suffering from severe bronchial and lung infection which was diagnosed as pulmonary tuberculosis, with rheumatic swelling of his legs and ankles and a weakened condition of the heart; that prior to April 25 claimant may have had a slight attack of pulmonary tuberculosis which had not become active and which in no manner interfered with his work; that by reason of inhaling the gases and fumes claimant has suffered a general breakdown of his physical and nervous system, with well-developed endocarditis; that claimant at the time he sustained the injuries was twenty-six years of age and the head of a family consisting of a wife and three children; that he was earning $47.50 per week; that his physical disability is permanent

and was brought about by inhaling the gases and fumes on April 25. As conclusions of law the court found that claimant is entitled to $20 per week for 500 weeks as for permanent disability, and that the findings of the board to the contrary should be set aside.

No contention is made that claimant is not permanently disabled. The issue between the parties hinges upon the cause of the disability. The evidence shows without dispute that the disability was brought about by reason of infection getting into the blood stream. The point of difference between the parties is whether the inhalation of the gases and fumes had anything to do with causing the infection to be thrown into the blood stream.

The contention of the board is that claimant's disability was brought about by reason of pyorrhea and infected tonsils, which an examination made shortly after inhaling the gases and fumes disclosed he was afflicted with, and that he never had tuberculosis and that his present disability is due to endocarditis caused by germs getting into the blood stream, which may result from pyorrhea and infected tonsils, without any superinducing cause; and that the endocarditis was not discovered until more than a year after he inhaled the gases and fumes and thus was not caused thereby; and that claimant did not carry the burden of proof resting upon him to show that the disability was produced by inhaling the gases and fumes.

Our province, as above noted, under the circumstances of this case, is to determine whether there is any substantial evidence in the record to justify the conclusions of the court.

Claimant produced evidence to the effect that eight or nine days after the accident, upon examination by physicians, it was discovered that he was suffering from a severe lung infection which had been thrown into the blood stream about seven or eight days previously, causing swelling of the limbs. The doctors diagnosed the case as pulmonary tuberculosis. Since it was shown that this disease can be detected with accuracy only by examination of the sputum, and since it was

shown that this was not done, we may concede, for the purposes of this case, that there is not sufficient evidence to warrant a finding that claimant had or has pulmonary tuberculosis. There is evidence, however, that he had infected lungs eight or nine days after the accident.

Dr. Keenan, in speaking of claimant, said: "He had difficulty in breathing, pain in his chest, general weakness. I found rales, a condition of the lungs. * * * Any infection of the lung which gets into the blood stream and affects the lining of the heart is the endocarditis," and that such an experience as coming in contact with gas and fumes in a mine tunnel would aggravate the condition that existed before.

Dr. Allred testified: "He was experiencing difficulty in breathing, called dyspyonea. Some coughing and weakness, and pain in the chest. Moist rales throughout the bronchial tree, some impaired resonance due to moisture."

The board's witness, Dr. Hitchcock, said that the calcification and the peribronchial thickening evidenced in his lungs at the time of the trial in the district court indicates there was a previously existing condition of infection in the lung which may or may not have been of a tubercular character, and that the condition of his lungs at the time of the trial would not exist unless at some previous time there was an active infection in the lung. He also admitted that if claimant had infected teeth and tonsils and then inhaled gas and fumes sufficient to cause him to have headaches, to cough to the extent that he coughed up blood, and to become sick to his stomach, such an experience might liven up the condition of tonsilitis or bad teeth and throw the infection into the blood stream. He also said that the rheumatic condition resulting in the swelling of his limbs indicates that the infection got into the blood stream about a week or ten days prior to the time the swelling showed up.

Dr. Durnin, a witness for the board, said that inhaling the gas might have irritated a previously existing disease.

Dr. Cooney, a witness for the board, said: "The calcification and fibrosis in the lungs would indicate a previous condition of an infection of some kind in the lungs," and that the "percentage of the cases would be tubercular but could be due to other infecting organisms."

While it is true that the doctors testifying for the board said that if claimant had infected tonsils and teeth prior to inhaling the gas and fumes they were of opinion that the infection in the blood stream came from the teeth and tonsils, yet they all admitted that the swelling of the legs would not occur until from seven to ten days after the infection got into the blood stream.

Dr. Allred, a witness for claimant, in testifying regarding the cause of claimant's disability, in response to the following question, "And, Doctor, if you found evidences, such as you did, of some infection in the blood stream as might be indicated by the swelling of his limbs at the time you first examined him on May 3d or 4th, would that indicate that something happened about a week or ten days previously to put an infection into that blood stream?" said: "There is such a period, or waiting period, it is usually from seven to ten days. There is nothing else in the history of this patient which would account for the infection getting into the blood stream other than the thing that occurred to him about a week previously, encountering this gunpowder smoke or dynamite smoke."

So that, whether the infection which got into the blood stream resulting in claimant's disability came from his lungs, or from his teeth or tonsils, and whether that disability be tuberculosis or endocarditis, there is substantial evidence that it was brought about as the result of inhaling the gases and fumes, and the court was warranted in so finding. This being so, the judgment of the district court must be sustained, for the rule is that a workman is entitled to compensation when a previously existing latent condition or disease, not disabling, is lighted up, aggravated, or accelerated by some fortuitous event (sec. 2870, Rev. Codes 1921),

in other words, by some occurrence aside from the usual course of events (*Micale* v. *Light,* (Pa. Super.) 161 Atl. 600) occurring in the course of his employment, which produces disability. (*New River Coal Co.* v. *Files,* 215 Ala. 64, 109 South. 360; *Utilities Coal Co.* v. *Herr,* 76 Ind. App. 312, 132 N. E. 262; *Carroll* v. *Industrial Com.,* 69 Colo. 473, 195 Pac. 1097, 19 A. L. R. 107, and note on page 110; *Tintic Milling Co.* v. *Industrial Com.,* 60 Utah, 14, 206 Pac. 278, 23 A. L. R. 325, and note on page 335. And see notes in 28 A. L. R. 204 and in 60 A. L. R. 1299.) Also compare *Nicholson* v. *Roundup Coal Min. Co.,* 79 Mont. 358, 257 Pac. 270.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS, concur.