# STATE EX REL. LENA RAU v. DISTRICT COURT OF RAMSEY COUNTY AND ANOTHER.[1]

November 2, 1917.

No. 20,535.

**Workmen's Compensation Act — sunstroke.**

1. Sunstroke is a personal injury caused by accident within the meaning of the Workmen's Compensation Act.

**Same — accident arising out of employment.**

2. Where the work and the condition of the place where it is carried on expose the employee to the happening of an event causing the accident, there is no longer a risk to which all are exposed, and the result is an accident arising out of the employment.

[1]Reported in 164 N. W. 916.

Upon the relation of Lena Rau the supreme court granted its writ of certiorari directed to the district court for Ramsey county, the Honorable Grier M. Orr, one of the judges thereof, and the city of St. Paul, to review the proceedings in that court under the Workmen's Compensation Act brought by relator, as widow of decedent employee, against respondent city, as employer. Reversed.

*Kueffner & Marks,* for relator.

*O. H. O'Neill* and *W. J. Giberson,* for respondent.

QUINN, J.

Certiorari to review a judgment of the district court of Ramsey county, denying compensation, under the Workmen's Compensation Act, to the relator, Lena Rau, widow of the decedent George Rau, who was an employee of the respondent city.

For a number of years George Rau had been employed by the city of St. Paul, doing manual labor on its streets at $2 a day, under the direction of a foreman, during which time he and the defendant were bound by and subject to the provisions of part 2 of chapter 467, p. 677, Laws of Minnesota for 1913, and amendments thereto. On July 1, 1916, while so employed, he was working on East Robie street. The day was hot. He was working in the open with no protection from the rays of the sun. The street was sandy. It had rained the night before and the sand was moist. During the early part of the afternoon decedent and his fellow workmen rested for a time in the shade near by. They resumed work at about 3 o'clock. Shortly thereafter Rau was at work near the middle of the street. A workman saw him stagger and went to his assistance. The foreman gave him a drink of water and then took him to the hospital, arriving there at about 4:30. Rau was in an unconscious condition, temperature 110; pulse 110. He regained consciousness at about 11 o'clock that evening. The doctor in charge stated that Rau was suffering from sunstroke. On the following day he was conscious and took liquid diet. He left the hospital on the afternoon of the third; on the fourth Dr. Endress was called to the Rau home and found Rau's temperature 102 and pulse 100. On the fifth he was improved, but died on the morning of the seventh. The trial court found that the cause of death was sunstroke.

The record contains none of the testimony offered upon the trial, and the case must be considered solely upon the findings of the trial court and determined upon deductions therefrom.

The question here for determination is: Did Rau come to his death by accident arising out of and in the course of his employment, within the meaning of the compensation act? If he did, then the relator is entitled to recover compensation, and the judgment of the district court should be reversed; otherwise, affirmed.

The term "accident" as used in the compensation act and as therein defined shall "be construed to mean an unexpected or unforeseen event, happening suddenly and violently, with or without human fault and producing at the time, injury to the physical structure of the body." G. S. 1913, § 8230.

The first inquiry is: What is sunstroke? It is stated, in effect, in Hare's Practice of Medicine, 1915, that sunstroke, more properly called heat-stroke, is a condition of the body produced by great heat; that the chief factor is the presence of great heat associated, as a rule, with marked humidity and physical exertion, and that heat-stroke may occur at night as well as day, provided the atmosphere is hot and moist. Webster's New International Dictionary defines sunstroke as "an affection, often fatal, due to exposure to the sun or excessive heat and marked by sudden prostration, with symptoms like those of apoplexy." The Encyclopedia Americana article on the subject begins: "Sunstroke, prostration due to exposure to intense external heat. Such exposure may be to the direct or indirect rays of a tropical sun or to the excessive heat of an engine room. In either case heat and physical exertion combine to bring about the results. A high degree of humidity of the atmosphere is one of the most important features since this hinders free evaporation from the body."

The conditions surrounding decedent at the time of his injury exposed him to an unusual danger different from that to which the masses engaged in like employment were subjected. It had rained the night before, the sand was wet, the sun's rays direct, thereby enhancing liability to sunstroke. Decedent was exposed to the direct rays of the sun in addition to the humid atmosphere emanating from the wet street.

That the injury was sustained in the course of the employment is not

denied; that it was an "unexpected or unforeseen event" is not questioned, and we have no difficulty in arriving at the conclusion that it was an event "producing at the time injury to the physical structure of the body," "happening suddenly and violently." It is undisputed that the day was extremely hot. The men had rested for three-quarters of an hour in the shade and had returned to their labor. Decedent was at work near the middle of the street when, all at once, he was seen to stagger. He had been overcome, had suffered a sunstroke. This was a violent injury produced by an external power, not natural. The foreman came to his assistance, gave him a drink of water and immediately removed him to a hospital where his temperature was found to be 110 and pulse 110. He was unconscious and remained in that state until 11 o'clock that evening. The intense heat of the sun, associated with the humidity of the atmosphere emanating from the wet sand, as an external cause, was a violent agency in the sense that it worked upon decedent so as to cause his injury and death. The conclusion that his death was caused by violent and external means is inevitable. That a death is unnatural imports a violent agency as the cause. Paul v. Travelers' Ins. Co. 112 N. Y. 472, 20 N.E. 347, 3 L.R.A. 443, 8 Am. St. 758; Pickett v. Pacific Mid. Life Ins. Co. 144 Pa. St. 79, 22 Atl. 871, 13 L.R.A. 661, 27 Am. St. 618.

In the cases of Ismay, Imrie & Co. v. Williamson (1908) A. C. 437, 439-441, Morgan v. S. S. "Zenaida," 2 B. W. C. C. 19, and Davies v. Gillespie, 5 B. W. C. C. 64, death by heat-stroke was held to be an accident within the meaning of the Workmen's Compensation Act. In the Ismay case a workman, in a weak and emaciated condition, while raking ashes from under the boiler in a stokehole of a steamship, received a heat-stroke from the effect of which he died. In affirming a recovery in that case, Lord Loreburn stated:

"To my mind the weakness of the deceased which predisposed him to this form of attack is immaterial. The fact that a man who has died from a heat-stroke was by physical debility more likely than others so to suffer can have nothing to do with the question whether what befell him is to be regarded as an accident or not. * * * In my view this man died from an accident. What killed him was a heat-stroke coming suddenly and unexpectedly upon him while at work. Such a stroke is an unusual effect of a known cause, often, no doubt, threatened, but generally averted

by precautions which experience, in this instance, had not taught. It was an unlooked for mishap in the course of his employment. In common language it was a case of accidental death."

Concurring in this opinion, Lord Ashbourne remarked:

"Was this an accident arising out of and in the course of his employment? With great deference to those who hold a contrary opinion, I can myself see no room for serious doubt on the subject. Everything was in the course of his employment and arising out of it. But for the boiler and the heat-stroke, and the speedy exhaustion it caused, there would have been no accident. * * * Although a heat-stroke may be called a disease, it is in this case, in my opinion, a disease directly caused by an accident arising out of or in the course of an employment, particularly dangerous to Williamson, in consequence of his weak state of health."

In the Morgan case the workman was engaged as an ordinary seaman on board the steamship Zenaida, while the ship was at port off the Mexican coast. He was ordered to go over the side to paint the vessel. The heat was excessive, he was seized with sunstroke and his health was impaired. The trial court was of the opinion that he was suffering from an accident which arose out of and in the course of his employment, and awarded compensation. Upon review the award was sustained, it being held that the case was governed by the decision in the Ismay case.

There is a marked contrast between the sudden and violent effect of a sunstroke and the drinking of water infected with typhoid germs, as it requires days of time after the infection for the disease to develop, as held in State v. District Court of Rice County, supra, page 211, 164 N. W. 810.

Where the work and the conditions of the place where it is carried on expose the employee to the happening of an event causing the accident, there is no longer a risk to which all are exposed, and the result is an accident arising out of the employment. Andrew v. Failsworth Ind. Society, 20 Times L. R. 429; State v. District Court, supra, page 131, 164 N. W. 585, and cases cited. Was decedent exposed to something more than the normal risk to which men, in general, engaged in manual labor upon the streets are subjected in hot weather? If he was, then he was exposed to an extra danger arising out of his employment, and, if that contributed to the accident, then the accident arose out of the employment. We are of the opinion that there was a substantial abnormally

increased risk owing to the character of the street coupled with its moist condition, which contributed to the cause of the accident.

Reversed and remanded for further proceedings in accordance with the views herein expressed.