(No. 13085.—Decree affirmed.)

THE CITY OF JOLIET, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(HENRIETTA OBRECHT, Admx. Defendant in Error.)

*Opinion filed February 18, 1920.*

1. WORKMEN'S COMPENSATION—*when heatstroke arises out of employment.* Where an engineer is discovered in an unconscious condition in the engine room of a pumping plant where he was working at noon on a very hot day and dies of heatstroke a few minutes after being taken home, the Industrial Commission, under evidence that the engine room was hotter than the outside, may reasonably conclude that the heatstroke arose out of the employment without considering what might have happened under other circumstances.

2. SAME—*burden is on claimant to show injury was accidental.* The Compensation act provides for compensation only in case of accidental injuries, and the burden is on the claimant to show that the injury was the result of an accident.

3. SAME—*sunstroke or heatstroke may be the result of an accident.* The fact that sunstroke is considered a disease does not deprive the victim of it of a right to compensation under the Compensation act if the disease was the result of an accident, and it is not impossible for sunstroke or heatstroke to be the result of accident.

4. SAME—*when sunstroke may be regarded as accidental.* A sunstroke is an unexpected and unusual happening, and if it befalls

one in the ordinary course of conduct it must be regarded as accidental and not the ordinary and natural result to be anticipated from such conduct.

5. SAME—*when error in admitting the coroner's verdict is not prejudicial.* In an action under the Compensation act for compensation for a death from heatstroke suffered in the course of employment, admission of the coroner's verdict that the deceased "came to his death from natural causes and heat prostration" is error but is not prejudicial to the employer where the cause of death is established by other evidence.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

HILL & BULLINGTON, for plaintiff in error.

RALPH C. AUSTIN, and WILLIAM R. MCCABE, (WILLIAM C. MOONEY, and FRANK J. WISE, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The city of Joliet sued out this writ of error to review a decree of the circuit court of Will county; which dismissed a bill in chancery to review an award of the Industrial Commission allowing compensation for the death of Joseph Obrecht, an employee of the city, who died on Sunday, July 30, 1916, of heatstroke suffered on that day. The city's contention is that the death does not appear to have been caused by an accident arising out of the deceased's employment.

Obrecht was employed as an engineer at a pumping station, working eight hours a day, except on Sunday, when he worked twelve hours. He was fifty-seven years old, was about five feet ten inches tall and weighed about two hundred pounds. On July 30 it was very hot, the thermometer registering over a hundred degrees, as it had for several days before. Obrecht went to work Sunday morning and was seen at work in the engine room about twelve

o'clock, standing in front of the compressor, which he was wiping with some waste. Soon after one o'clock his wife came to the building to bring him his lunch and found him unconscious on a bench in the room. He was taken home in an ambulance and died in a few minutes after the arrival of a physician who had been summoned and who testified that he died from heatstroke.

The pumping station where the deceased worked was a frame building lined with tar paper, about 28 feet by 32 feet in size and 12 feet high, with doors in the south and north sides and eight windows. There was no ceiling and the roof sloped from the four sides to a peak, where there was a ventilator, which, as well as the windows, was open. In the building were a pump, two compressors and two motors. The plant was run by electricity and the manual labor of the employees was light. There was no artificial heat except that produced by the compressors, which in operation became heated to such an extent that the hand could not be held against them and the heat could be noticed several feet away. The compressors were in the southwest part of the building, with a space of about three feet between them and the south wall. It was in this space that Obrecht was working at twelve o'clock. There was no breeze on that day. The air in the building was stirred somewhat by the flywheel, which made 120 revolutions a minute, but the temperature inside the building was noticeably warmer than on the outside. One of the witnesses estimated that it was about twelve degrees warmer. While the plaintiff in error contends that the evidence justifies the conclusion that it was no hotter in the building than outside, it was the duty of the commission, and is not ours, to weigh the evidence, and the commission might well have concluded that in the place where Obrecht worked he was more exposed to danger from heatstroke than that to which people generally were subjected by the prevailing summer heat, especially where he was working at noon, between the south wall and

the compressor. The commission made findings that the deceased, while in the performance of his duties, suffered a heatstroke, as a result of which he died, and that the heatstroke was superinduced by the excessive amount of heat in the room in which he was working, and there was evidence to sustain its findings. The heatstroke occurred in the course of the employment, and there was evidence from which the commission might reasonably conclude that it arose out of the employment. The man was overcome by the heat. In his employment, and because of it, he was exposed to a degree of heat beyond the ordinary temperature of the day. While it cannot be demonstrated that he would not have been overcome if he had not been at work, the fact is that he was overcome under circumstances which furnish an adequate cause for that result, and neither the commission nor the court will indulge in conjecture as to what might have happened under other circumstances. He might have died from the heat of the day if he had stayed at home, but he did not and he did die from the heat of the day and the additional effect of his work and the artificial heat of the engine room.

The Workmen's Compensation act provides for compensation only in case of accidental injuries, and the burden is always on the claimant to show that the injury was the result of an accident. The plaintiff in error contends that Obrecht's death was occasioned by natural causes and was the result of disease and not of accident. Reliance is placed upon the decisions of various courts construing policies of insurance against personal injuries arising from accident and holding that sunstroke is a disease and not an accident. An examination of those cases, counsel say, indicates that it is established by the overwhelming weight of legal and medical authority that sunstroke is a disease and does not result from injury. The admission that sunstroke is a disease will not deprive the victim of it of a right to compensation under the Workmen's Compensation act if the

disease was the result of accident. It can hardly be contended that it is impossible for sunstroke or heatstroke to be the result of an accident. If in the case of an emergency for the saving of life or property great and long continued exertion in excessive heat is followed by exhaustion and heatstroke, the heatstroke would ordinarily be regarded as accidental. Anthrax is a disease, but where it is accidentally contracted in the course of employment and death results it is within the Compensation act. (*Chicago Rawhide Manf. Co.* v. *Industrial Com. post,* p. 616.) So, also, of arsenical poisoning. (*Matthiessen & Hegeler Zinc Co.* v. *Industrial Board,* 284 Ill. 378.) In the latter case we had occasion to discuss the meaning of "accident" and "accidental injury," and we said: "Anything that happens without design is commonly called an accident, and at least in the popular acceptance of the word any event which is unforeseen and not expected by the person to whom it happens is included in the term. * * * The meaning of the word as used in the Workmen's Compensation act is necessarily influenced by the various provisions of the act and the purpose of its enactment, and cannot be determined, alone, from any definition found in a dictionary. * * * The words 'accident' and 'accidental injury' imply * * * that an injury, to be accidental or the result of an accident, must be traceable to a definite time, place and cause, but if there is such a definite time, place and cause and the injury occurs in the course of the employment the injury is accidental within the meaning of the act and the obligation to provide and pay compensation arises. While it is not intended, and perhaps not possible, to give a definition of the words used in the act as applied to all possible circumstances, it may safely be said that an injury is accidental, within the meaning of the act, which occurs in the course of the employment unexpectedly and without the affirmative act or design of the employee." The time and place of Obrecht's seizure are certain. There is good reason to say that the cause was

his employment in the heat of the engine room on the hottest day of the summer, and it occurred in the course of his employment unexpectedly and without any affirmative act or design on his part.

In *Higgins* v. *Midland Casualty Co.* 281 Ill. 431, the casualty insurance cases cited by counsel for the plaintiff in error were considered and we declined to follow them. Numerous other cases were reviewed in which the meaning of the terms "accident" and "accidental means" was discussed in connection with sunstroke and various other kinds of injuries. The sunstroke in that case, which affected a policeman while performing his duty in regulating street traffic, was held to have been accidental. The rule to be deduced from the discussion of the question in that case and the decisions cited in the opinion is that a sunstroke is an unexpected and unusual happening, and if it befalls one in the ordinary course of conduct it must be regarded as accidental and not the ordinary and natural result to be anticipated from such conduct.

In the cases, respectively, of a laborer on the streets, an employee working in a gravel pit, a fireman in a boiler room, and an employee working in a heated sheet-iron building with tarred roofing, on a hot day, the courts of various States have held that the workman's being overcome by excessive heat was an accident arising out of the employment. *State* v. *District Courts,* 138 Minn. 250; *In re McCarthy,* 230 Mass. 429; *Walsh* v. *River Spinning Co.* 41 R. I. 490; *Young* v. *Western Furniture Co.* 101 Neb. 696.

The coroner's verdict that the deceased "came to his death from natural causes and heat prostration" was improperly received in evidence over the plaintiff in error's objection, but there was no question as to the cause of death, which was established by other evidence, and no prejudice to the plaintiff in error.

The decree dismissing the bill will be affirmed.

*Decree affirmed.*