## TEXAS EMPLOYERS' INS. ASS'N v. MOORE et al. (No. 8710.)

(Court of Civil Appeals of Texas, Galveston. Nov. 5, 1925. Rehearing Dismissed by Agreement Nov. 25, 1925.)

**1. Master and servant ☞405(4)—Evidence held to show death from heat prostration.**

In suit to set aside award of compensation for death, evidence *held* to show that death of employé, press feeder, working in underground basement, resulted from heat prostration.

**2. Master and servant ☞418(6)—Verdict on evidence in compensation case conclusive.**

Where proof preponderates in favor of verdict awarding compensation, court on appeal is without authority to set it aside.

**3. Master and servant ☞373—Death from heat prostration held compensable as "accident" and "injury."**

Death of employé, press feeder, working in underground basement, resulting from heat prostration, *held* not an act of God, but compensable as an accident and injury, under Employers' Liability Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91).

**4. Trial ☞351(5)—In suit to set aside award of compensation for death, requested issues held covered by instructions given.**

In suit to set aside award of compensation for death of employé, resulting from heat prostration, requested issues of defendant, submitting questions whether employé died as result of injury received while in services of employer, *held* covered by issues submitted.

**5. Master and servant ☞373—"Heat stroke" or "prostration" constitutes "injury" upon physical structure of body.**

An external agency, which when applied thereto produces such perceptible change in body or its functions·as to suddenly still forever operation of its vital organs, as in cases of "heat prostration" or "heat stroke," is an injury upon its physical structure within Compensation Acts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Injury.]

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by the Texas Employers' Insurance Association against Thomas W. Moore and others, to set aside an award of the Industrial Accident Board. From a judgment for defendants, plaintiff appeals. Affirmed.

Morris, Sewell & Morris, of Houston, for appellant.

Fouts & Patterson, of Houston, and J. W. Moore, of Palestine, for appellees.

GRAVES, J. This statement, adopted by the opposing litigants as correct, is taken from appellants' brief:

"This suit was instituted in the district court of Harris county, Tex., by appellant, against appellees Thomas W. Moore and wife, Florence Moore, and Elwood Fouts and R. C. Patterson. The purpose of the suit was to set aside an award and final ruling of the Industrial Accident Board of the state of Texas, dated August 24, 1923, wherein Thomas W. Moore, surviving father, and Mrs. Florence Moore, surviving mother, of William Henry Moore, deceased, were awarded compensation, and appellant, by the terms of said award, was ordered to pay appellees the sum of $15 per week for a period of 360 weeks; it being alleged in appellant's petition that it had given notice as required by law, and it was not willing to abide by said ruling and decision of the Industrial Accident Board, and prayed that same be set aside and held for naught.

"Appellees Thomas W. Moore and wife answered by general demurrer and general denial. By way of cross-action and complaint,

against appellant, they alleged that William Henry Moore, their son, was an employé of the Houston Chronicle Publishing Company, as pressman, and that on June 2, 1923, said William Henry Moore was living at the home of his parents and was contributing to their support and to the support of the family; that on the 2d day of June, 1923, while the said William Henry Moore was at work in the pressroom of the Houston Chronicle Publishing Company, and while in the course of his employment, and in the discharge of his duties, he was overcome and prostrated by heat, from which he died; it being further alleged in said cross-action that the 2d day of June was a hot day, and that, on account of the construction of the plant and the pressroom wherein the deceased was required to work, he was particularly and peculiarly subject to intense heat, and in this connection alleged the location of the pressroom, its dimensions, that it contained very large presses, and was separated from the boiler room by small partition, that said pressroom was not adequately ventilated, on account of being in the basement below the street level, was not equipped with an exhaust fan, etc.; that on said day the Houston Chronicle Publishing Company was a subscriber to the Employers' Liability Act, and carried a policy of insurance as provided in said act with appellant, and that, after the death of the said Moore, appellees filed their claim with the Industrial Accident Board, and on the 24th day of August, 1923, said board entered its award, etc.; that the sums which the said William Henry Moore contributed to said appellees for their support and the support of the rest of the family was far in excess of $15 per week; and further set up grounds showing that they were entitled to the payment of the amount due them as alleged, in a lump sum. Elwood Fouts and R. C. Patterson filed their answer, which consisted of general demurrer and general denial, and by way of cross-action alleged that they were engaged in the practice of law, and had been employed by appellees Thomas W. Moore and wife to represent their interests, and that they had represented them before the Industrial Accident Board, and prayed that they be awarded one-third of the amount recovered as attorneys' fees.

"The cause was tried before a jury on the 13th day of May, 1924, and, upon the answers of the jury to the special issues submitted to them by the court, a judgment was rendered in favor of appellees against appellant."

In answering the special issues, the jury found that William Moore died of "heat prostration," and appellant attacks the judgment resting upon that verdict on three general grounds: (1) The evidence was not sufficient to support it; (2) had the evidence been sufficient for the finding, "death resulting from heat stroke or heat prostration is not compensable under the terms of the Employers' Liability Act of Texas (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) because the death of one so caused is not the result of an injury, or personal injury, as defined in the act," but was caused by the act of God; (3) the jury should have been required to find whether or not the death was the result of such an injury received in the course of his employment as "meant damage or harm to the physical structure of his body, or such disease or infection as naturally results therefrom."

Objections to the issues given and to the jury's findings thereon, together with requested peremptory and other instructions, raising all these contentions, were duly presented.

In our opinion, the facts and proceedings reflected by the record repel the attack. The view that the evidence was not only insufficient to support the jury's finding that Moore's death resulted from heat prostration, but also showed it to have been caused by the act of God, rests mainly upon two assumptions: (1) That, at the time he was stricken, it was no hotter in the Chronicle pressroom where he was working than on the street outside, consequently he was then "engaged in the performance of duties that subjected him to no greater hazard than ordinarily applies to the general public"; (2) that the testimony of Drs. Coulter and Levy was not such as to enable the jury to determine the cause of his death, being as consistent with the theory that it resulted from apoplexy, heart failure, acute indigestion, or other affection, as from heat stroke.

We cannot so appraise the testimony in either particular. As concerns the first, while there was a conflict about the matter, at least two witnesses, after all the local conditions in the pressroom had been described and taken into account, positively swore that it was much hotter in there than outside, which conclusion the jury had ample warrant for adopting. With reference to the second, the two doctors—both of them being specialists, one a pathologist, the other an internist—testified as experts only, neither having seen the deceased either before or after death. They were catechised freely as to the symptoms, characteristics, aftereffects, and earmarks generally, of heatstroke, and in some hypothetical questions asked them were incorporated the circumstances under which Moore became ill and died, as well as the condition and appearance of his body after death. In response to such questions, Dr. Levy, the specialist in internal medicine, testified, "I would consider that he died from heat stroke under those conditions," while Dr. Coulter replied that those so stated were two of the conditions found in heat prostration, but they would not be enough for him to base a diagnosis upon, as he "could only diagnose any case from pathological findings." Considering the testimony of both doctors as a whole, however, there is clearly nothing in it militating against the jury's finding, as appellant contends, but rather does it add material weight to the other facts and circumstances in evidence tending to support their conclusion. Moreover, as just intimated, in arriving at the cause of the death, the jury were not limited to these opin-

ions of the experts, but were privileged to and did take into account many outside considerations, so that, even if it could be said that such opinion evidence was as consistent with death from some other cause, the jury were still at liberty in weighing it with the other circumstances to say that heat stroke was the cause.

[1, 2] Our conclusion upon the evidence as a whole is that there is no even balancing, but that the proof decidedly preponderates in favor of the verdict; this court is therefore without authority to set it aside.

As before indicated, the claim that Moore's death was caused by the act of God is predicated upon the assertion that it was no hotter in the pressroom than on the street outside, and that he was at the time "engaged in the performance of duties that subjected him to no greater hazard than ordinarily applies to the general public." There is no contention that heat stroke absolutely, irrespective of the special and particular conditions from which it results, is an act of God for which no human agency would be responsible; indeed, there could not successfully be, we think, under the authorities on the question here appended.

[3] Appellant's only presentment upon this feature is therefore fully answered by the finding already made that Moore was not, when stricken, being subjected to no greater hazard than the general public, but on the contrary was localized in an underground basement, much hotter and more trying to work in than would have been the natural and unrestricted atmosphere of the outside. That heat prostration, induced and caused by such particular and artificial conditions, different from those to which the general public is exposed, is not an act of God, but is compensable as an accident and injury under Employers' Liability Acts substantially like our own in this respect, has been quite generally held. Schneider's Workmen's Compensation Law, vol. 1, pp. 303 and 310, inclusive, and volume 1, pp. 468 to 475, inclusive; Young v. Western Furniture & Mfg. Co., 101 Neb. 696, 164 N. W. 712, L. R. A. 1918B, 1001; State ex rel. Rau v. District Court, Ramsey County, et al., 138 Minn. 250, 164 N. W. 916, L. R. A. 1918F, 918; United Paper Board Co. v. Lewis, 65 Ind. App. 356, 117 N. E. 276; City of Joliet v. Industrial Commission, 291 Ill. 555, 126 N. E. 618; Millers' Indemnity Underwriters v. Heller (Tex. Civ. App.) 253 S. W. 853; Travelers' Insurance Co. v. Smith et al. (Tex. Civ. App.) 266 S. W. 574; Texas Employers' Insurance Association v. Jimenez et al. (Tex. Civ. App.) 267 S. W. 752; 6 Negligence Compensation Cases Ann. 710.

No reason occurs for not applying the principle of those holdings here; indeed the Jimenez and Heller Cases seem to us analogous. It but remains to consider the special issues appellant requested. Those given by the court and the jury's answers were:

"No. 1. Can you, from a preponderance of the evidence, determine of what physical trouble William Henry Moore died?  Yes.

"If you have answered the foregoing question No. 1 'Yes,' then you will answer the following questions:

"No. 2. Of what did William Henry Moore die?  Heat prostration.

"No. 3. Was William Henry Moore's death directly and proximately caused by the conditions of the rooms in which he was working at the time of his death?  Yes."

Those appellant asked instead were as follows:

"No. 3. Was the death of William Moore occasioned by a damage or harm to the physical structure of his body?

"No. 4. Was the death of William Moore occasioned by a disease resulting from damage or harm to the physical structure of his body?

"No. 5. Did William Moore, while in the employ of the Houston Chronicle Publishing Company, receive an injury?

"In this connection, you are charged that by the term 'injury' as used in the above suit, is meant damage or harm to the physical structure of his body or such disease or infection as naturally results therefrom."

Is heat prostration, superinduced by such special and artificial conditions as here obtained, a damage or harm to the physical structure of the body, or such disease or infection as naturally results therefrom?  If it is, the questions the court asked imported the same thing as those appellant wanted substituted, and there was no prejudicial error in choosing the one form of submission over the other.

[4, 5] To ask this question seems to us to answer it. The medical authorities tell us that heat stroke or prostration, which terms they quite generally use as interchangeable, is a condition of the body produced by great heat (State v. District Court, etc., 138 Minn. 250, 164 N. W. 916, L. R. A. 1918F, 918), and, if it is a resulting state of the body at all, the lay mind does not readily apprehend how it can be other than such a one as naturally flows from some damage or harm to its physical structure; in other words, an external cause or agency which, when applied thereto, produces such perceptible change in the body or its functions as to suddenly still forever the operation of its vital organs, as was the finding in this instance, necessarily inflicts an injury upon its physical structure. So the jury's answers to the questions given elicited in effect the same facts appellant desired found, and the point urged constitutes a distinction without a difference.

Pursuant to these conclusions, appellant's assignments have been overruled, and the trial court's judgment affirmed.

Affirmed.