### HENDERSON et al. v. MARYLAND CASUALTY CO.

#### No. 6474.

Circuit Court of Appeals, Fifth Circuit.

Dec. 10, 1932.

Rehearing Denied Jan. 14, 1933.

C. E. Bryson and William V. Brown, both of Texarkana, Tex., for appellants.

Rollin W. Rodgers, of Texarkana, Tex., for appellee.

Before BRYAN, SIBLEY and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Ammie Henderson and her children sought by suit in a state court to set aside an unfavorable award by the Industrial Accident Board and to recover for the death of their husband and father, Freeman Henderson, under the provisions of the Texas Workmen's Compensation Law, Rev. St. 1925, art. 8306 et seq., as amended. The defendant insurer, Maryland Casualty Company, because of diversity of citizenship removed the suit to the District Court of the United States, which overruled a motion to remand and on trial directed a verdict for the defendant. These rulings are assigned as error.

The original petition claimed that Henderson's average weekly wages were $13.50, on which basis under the terms of the statute a fixed recovery of $2,916 was due, which sum was sued for. The petition for removal set up that the true figure for average weekly wages was $16.95, and was not in doubt or dispute, and that $3,661.20 was the amount of recovery due under the statute, if anything was due, and was the true amount in controversy; and that the lesser amount had been fraudulently and untruthfully alleged to defeat the jurisdiction of the United States courts. On a trial of the motion to remand, plaintiff's counsel admitted that $16.95 was the true wage, and that the lesser amount had been alleged to prevent removal, but contended that it was a voluntary reduction of the demand which was permissible and prevented a recovery of more than $2,916, citing Maryland Casualty Co. v. Sledge (Tex. Civ. App.) 46 S.W.(2d) 442; and therefore that sum was the amount actually in controversy. Cases like Woods v. Massachusetts Protective Association (D. C.) 34 F.(2d) 501, were cited to justify such voluntary reduction to prevent removal, and also such as Thompson v. Butler, 95 U. S. 694, 24 L. Ed. 540, Alabama Gold Ins. Co. v. Nichols, 109 U. S. 232, 3 S. Ct. 120, 27 L. Ed. 915, and Pacific Postal Telegraph Co. v. O'Connor, 128 U. S. 394, 9 S. Ct. 112, 32 L. Ed. 488, where there were holdings that verdicts and judgments might by authority of the trial court be reduced before appeal to prevent recourse to the Supreme Court. On the other hand were cited state court decisions holding that credits on a liquidated demand could not be entered without defendant's consent so as to bring the claim within the jurisdiction of an inferior court, such as Pecos & North Texas Co. v. Canyon Coal Co., 102 Tex. 478, 119 S. W. 294, and the cases touching fraudulent joinder of parties to prevent removal were also referred to. The reduction as made was not positive and final like a credit entered upon a note, but might at any time have been withdrawn by an

amendment alleging the truth. Such an amendment was in fact made so soon as the motion to remand was overruled. This amendment we think waived and cured any error that may have been made in refusing the remand. The controversy really was one within the jurisdiction of the District Court, and the pleadings thereafter showed it. The plaintiffs thenceforward were invoking the court's jurisdiction to recover $3,661.20. While asserting this claim, they could no longer maintain the inconsistent position that only $2,916 was involved. They are estopped to do so. Compare New Lamp Chimney Co. v. Brass & Copper Co., 91 U. S. at page 659, 23 L. Ed. 336; Davis v. Wakelee, 156 U. S. 681, 15 S. Ct. 555, 39 L. Ed. 578.

█ We think the instructed verdict was right. The Texas statute places the burden of proof on the plaintiffs. Article 8307, § 5. They must affirmatively show that the death of the employee arose from an injury originating in the work of the employer while the employee was engaged in or about the furtherance of the business of the employer. "The term 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." Article 8309, § 1. Death from disease not thus originating or from causes operable equally on the general public is not compensable under the statute, although it occurs while decedent is at work. Buchanan v. Maryland Casualty Co., 116 Tex. 201, 288 S. W. 116; Southern Casualty Co. v. Flores (Tex. Com. App.) 1 S.W.(2d) 260. Yet it is held that the rupture of a blood vessel resulting from overexertion in the work and producing apoplexy and partial paralysis is a compensable injury, Security Union Ins. Co. v. Alsop (Tex. Civ. App.) 1 S.W.(2d) 921; and heat stroke is also held such when caused by an exposure to heat in the work greater and more unusual than people generally are exposed to, Hebert v. New Amsterdam Casualty Co. (Tex. Com. App.) 1 S.W.(2d) 608; Texas Employers' Ins. Association v. Moore (Tex. Civ. App.) 279 S. W. 516.

█ The testimony here showed that Henderson had been working with the same employer for twenty-five years, and must have been past middle life. Urine tests made the day of his death showed him badly afflicted with Bright's disease. Though he had continued to work regularly, he had complained of headaches. On September 4, 1930, at 11 a. m., while engaged in his ordinary work in the open air on a hot but not unusually hot day, using a sledge-hammer to drive the axle into the wheel of a tramcar which was a usual employment, he staggered away and sat down, complained of blindness, seemed to become paralyzed, went into a coma, and died that night. No suggestion of accident or injury or sunstroke was made at the time. Two doctors who attended him say that, while apoplexy causing paralysis was at first indicated, convulsions followed, and these and the urine tests satisfied them that uremic poisoning was the cause of death. There was no autopsy. Another doctor who did not attend him thought the convulsions consistent with apoplexy caused by exertion in the heat of the sun, and that, notwithstanding the kidney disease, apoplexy or heat stroke might have caused his death. Regardless of whether uremic poisoning or apoplexy from hardened arteries was the immediate cause of death, we think the evidence insufficient to carry the burden of proof that there was any physical injury to the bodily tissues arising out of the employment. Henderson had no accident, suffered no strain, was doing nothing unusual or violent, and was exposed by his work to no heat different from that operating upon other people out of doors. It is shown that he began to die while at work, but is not shown that injury originating in his employment caused his death within the meaning of the law.

Judgment affirmed.