## McVEARRY v. FIDELITY & CASUALTY CO. OF NEW YORK.

### No, 8173.

Circuit Court of Appeals, Fifth Circuit.

Feb. 6, 1937.

Eugene T. Edwards, of El Paso, Tex., for appellant.

Allen R. Grambling, of El Paso, Tex., for appellee.

Before SIBLEY and HOLMES, Circuit Judges, and STRUM, District Judge.

STRUM, District Judge.

This action, originating in a Texas state court and removed to the federal District Court because of diversity of citizenship, was instituted as an appeal from the action of the Texas Industrial Accident Board denying plaintiff compensation for the death of her husband, John M. McVearry. In the District Court a verdict was directed for the defendant, and from the consequent judgment plaintiff appeals.

McVearry, about 51 years old, and a labor foreman for Nichols Copper Company, on May 13, 1935, while at work reached up to remove a tag from a small "blister" car standing upon a narrow-gauge railroad track 30 inches wide, which track rested upon a dirt fill about 12 inches high. Without any apparent outward cause he slipped slowly to the ground, endeavoring to check his fall by holding on to the car. The car was not in motion. He attempted to rise, but was apparently unable to do so. There was no proof of trauma or contusion about his body after the fall. He was placed in a truck and taken home, where he remained under treatment, and usually in bed, until October 6, 1935, when he died. On the occasions when he was out of bed he walked with great difficulty and with a spastic gait. His back gave him much pain and his legs, as well as an area near the lower end of his spine, seemed numb. Prior to May, 1935, he was usually able to walk without difficulty, although as early as 1926 he had symptoms of numbness and trembling of his feet and fingers, and on occasions pain in the left sciatic nerve.

The undisputed evidence discloses that McVearry had previously suffered from a long series of ailments. Prior to 1925 he had been a railroad trainman for about 25 years. He developed pulmonary tuberculosis, which apparently became totally disabling about January 1, 1925, for which he underwent treatment in a sanitarium, and during 1925 or 1926 collected total disability benefits from the Brotherhood of Railroad Trainmen. As early as 1925 he suffered from backaches, had a chronic sinusitis, and quinsy. In 1926 he complained of vertigo, constant backache, and suffered with severe digestive disturbances, dysentery, or other bowel trouble. He repeatedly told physicians he had tuberculosis of the bowels, though one physician thought McVearry's belief in this respect was unfounded. On two occasions, about April, 1926, and February, 1927, when under the stress of excitement or anger, McVearry fainted. Excitement and anger seemed to cause a return of diarrhoea with which he was frequently affected. His tubercular condition was pronounced "arrested" in 1927. He did not return to railroad work, but went to work for Nichols Copper Company about 1930, since which time he worked for that firm with substantial regularity. In December, 1933, he was again suffering from diarrhoea, fever, vomiting, and dizziness. On August 13, 1934, he suffered an injury to his back, which developed into a typical lumbago, and which incapacitated him for eleven weeks, but he returned to work about November 12, 1934. He was again confined at home with sickness for a week prior to May 13, 1935, having just returned to work that day a few hours before his fall already described.

During these various illnesses, beginning as early as 1925, McVearry took a prepared medicine, a coal tar product, the use of which if continued for a long length of time will result in granulo-cystosis, a disease of the blood which destroys the white blood cells leaving the body without adequate defense against infection. The only direct testimony as to the cause of McVearry's death was from the doctor who then attended him. This doctor testified that McVearry definitely died from granulo-cystosis. There was no other direct testimony, medical or lay, to refute that testimony. This physician, and also another reputable physician who had attended and treated McVearry intermittently for ten years, testified that in their opinion there was no causal connection between McVearry's fall on May 13, 1935, and his death on October 6, 1935.[1]

---

[1] The first-mentioned physician said: "According to my experience it could not, and according to the literature I had concerning granulo-cystosis, it could not." The other physician said: "The slipping or falling to the side or to the hip, there could be no causal connection between a person dying from either of those diseases (bacillary dysentery or granulo-cystosis) and the fall such as you have mentioned; impossible to be believed or understood that caused it." A third physician who treated McVearry from July to September 1, 1935, testified that McVearry had trouble with his limbs, which this physician diagnosed as sciatica; that he was weak and debilitated; and that in this physician's opinion McVearry had tuberculosis.

Under the provisions of article 8307, § 5, Texas Rev.Stat., as amended by Acts 1931, c. 224, § 1 (Vernon's Ann.Civ.St. Tex. art. 8307, § 5), the burden is upon the plaintiff to prove her right to compensation. Commercial Ins. Co. v. Noack (Tex.Com.App.) 62 S.W.(2d) 72; Henderson v. Maryland Casualty Co. (C.C.A.) 62 F.(2d) 107, 109. In the latter case this court said: "The Texas statute places the burden of proof on the plaintiffs. * * * They must affirmatively show that the death of the employee arose from an injury originating in the work of the employer while the employee was engaged in or about the furtherance of the business of the employer. 'The term "injury" or "personal injury" shall be construed to mean damage or harm to the physical structure.of the body and such diseases or infection as naturally result therefrom.' Article 8309, § 1. Death from disease not thus originating or from causes operable equally on the general public is not compensable under the statute, although it occurs while decedent is at work." See, also, Halleck v. Hartford Indemnity Co. (C.C.A.) 75 F.(2d) 800.

Here, as in the Henderson Case supra, decedent was stricken while at work, but it is not affirmatively shown, as required by the Texas statute, that death was caused by injury originating in his employment or by diseases or infections naturally resulting therefrom.

Plaintiff contends McVearry died from a compression myelitis of the spinal cord resulting from the physical violence of his fall on May 13, 1935, and in support of this contention points to McVearry's spastic gait and paralysis and numbness of the lower extremities, which are also symptoms of a compression myelitis. The undisputed testimony is that some form of external violence sufficient to injure the bone is necessary to produce a compression myelitis. There is no testimony, medical or lay, that McVearry suffered from myelitis, or that his fall was of sufficient violence to cause a compression myelitis. Plaintiff's assertion that McVearry died of myelitis rests on no foundation other than the presence of symptoms which are common both to myelitis and granulo-cystosis. A verdict for the plaintiff on the theory that McVearry died of myelitis would be directly opposed to the unequivocal and uncontradicted testimony of the doctor who at-tended McVearry at death, who said that death was due to granulo-cystosis, and the testimony of both that doctor and the other who attended McVearry for ten years, that the fall sustained by McVearry on May 13, 1935, had no causal connection with his death. When this uncontradicted testimony is viewed in connection with McVearry's extended medical history, and the uncontradicted evidence of his continued use of a prepared medicine which will ultimately cause granulo-cystosis, and there being no substantial evidence to support plaintiff's theory of death from myelitis, or that the fall was of sufficient violence to produce a myelitis, only one inference can be fairly and reasonably drawn, and that is that McVearry's death resulted from disease unconnected with his fall. A contrary conclusion would be wholly conjectural. A verdict for plaintiff would have been so manifestly contrary to the evidence as to require the granting of a new trial. In these circumstances the District Judge properly directed a verdict for defendant. Atchison, T. & S. F. R. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896; Hemphill v. Mississippi Power Co. (C.C.A.) 84 F.(2d) 971; Farmers' Bank v. Missouri Commission Co. (C.C.A.) 53 F.(2d) 991.

Other errors assigned have been examined, but no reversible error found.

Affirmed.