## MADELINE BEADLE *v.* BETHLEHEM STEEL COMPANY.

### [No. 32, April Term, 1937.]

*Decided May 25th, 1937.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Louis S. Ashman,* for the appellant.

*William L. Rawls* and *Julian de Bruyn Kops, Jr.*, with whom was *George Weems Williams* on the brief, for the appellee.

SHEHAN, J., delivered the opinion of the Court.

. This is an appeal from a judgment of the Baltimore City Court, affirming a decision of the State Industrial Accident Commission, by which compensation to the claimant, Madeline Beadle, widow of Raymond Glenn Beadle, deceased, was denied. The single question here presented is: Was the evidence sufficient to show that Raymond Glenn Beadle died as a result of an accidental injury, arising out of and in the course of his employment by the Bethlehem Steel Company, on the 13th day of August, 1935?

Upon the completion of the testimony in the lower court, the jury was directed, by an appropriate prayer, to answer "No" on this single issue, and, from the judgment of the court thereon, affirming the decision of the commission, this appeal was taken.

In this opinion the question is further restricted because the employment, the death of the employee, and the date of his death, are not questioned. Whether there was an accidental injury, as contemplated by the statute, is the sole question to be considered in this opinion.

The deceased was employed by the Bethlehem Steel Company as a roller in Mill No. 6, commonly called the "hot mill," and was employed in the production of sheets of metal for tin plate. He was the boss of the crew of this mill and had been so employed for a number of years. We will not detail at length the various and numerous operations in connection with the employment and the production of the plate or metal sheets, the various divisions of the labor, and the operation of the mill. Our inquiry is directed to the fact whether he was engaged in the usual routine performance of his employment and labor and whether he received any injury as a result of any unusual or extraordinary condition of his employment not naturally and ordinarily incident thereto, or

from any impact or contact, or as a result of any unusual muscular exertion or unexpected movement which occasioned the injury from which he died. These principles are well established in this state, and applied in a number of recent cases. *Miskowiak v. Bethlehem Steel Co.*, 156 Md. 690, 145 A. 199, 201; *Heil v. Linck*, 170 Md. 640, 185 A. 555; *Slacum v. Jolley*, 153 Md. 343, 138 A. 244; *State Roads Commn. v. Reynolds*, 164 Md. 539, 165 A. 475; *Schemmel v. Gatch Co.*, 164 Md. 671, 166 A. 39, which also afford examples of accidental injuries contemplated by the Workmen's Compensation Law and defined by this court, and the application of the statutory provisions to the facts presented.

*Miskowiak v. Bethlehem Steel Co., supra,* is strikingly analogous to the instant case and grew out of a similar accident in the same mill in which the alleged accident and injury, here complained of, occurred. Judge Parke there said: "To entitle the claimant to compensation it was essential that there be at least some evidence that her husband died of heat stroke or heat prostration, and that such injury was occasioned by some unusual and extraordinary condition in his employment, not naturally and ordinarily incident thereto, and there is no such evidence in this case," and again, there was no evidence that he was doing other than being engaged in the routine performance of his labor, and the evidence clearly shows that he "had completed his day's work without receiving any injury by impact or contact or as a result of any unusual muscular exertion or unexpected movement," all of which is equally applicable and controlling in the instant case as in that case, and these principles were affirmed in the case of *Heil v. Linck, supra.* The dissent in *Heil v. Linck* is not based upon differences with respect to the principles stated, but upon the construction of the testimony as it appeared in the record. This case may be distinguished from *State Roads Commn. v. Reynolds, supra,* for in the instant case the deceased never varied from his usual and ordinary tasks. There was no undue exposure to heat or cold, nor did he perform any duties

not ordinarily incident to his usual employment. Here there was no sharp contact or unusual conditions or any eventualities beyond those that ordinarily could be expected in his usual employment. Further illustrations are presented in the cases of *Cambridge Manufacturing Co. v. Johnson,* 160 Md. 248, 153 A. 283; *Gunter v. Sharp & Dohme,* 159 Md. 438, 151 A. 134; *Sinsko v. Weiskittel & Sons Co.,* 163 Md. 614, 163 A. 851; *Atlantic Coast Shipping Co. v. Stasiak,* 158 Md. 349, 148 A. 452, where the evidence did not disclose accidental injuries or unusual and extraordinary conditions in the employment, not naturally and ordinarily incident thereto, within the meaning of the statute, such as occurred in the case of *State Roads Commn. v. Reynolds* and *Schemmel v. Gatch Co., supra.*

Upon reporting for work on the morning of the 13th of August, Beadle complained about cramps across his neck and upon the side of his left leader, and, during the day and in the course of his employment, manifestations of his condition were obvious in the manner in which he performed his usual duties. Whether his physical condition contributed to his dissolution has no bearing in this case, because the sole question here presented is as above stated, and not his inability to endure the usual and ordinary incidences or requirements in the course of his employment, because of some physical condition or depletion.

The following is a short summary of the facts. After detailing the processes by which the sheet metal is prepared or made into tin plate, it is shown that Beadle was connected with Mill No. 6 and was the foreman of the crew at that mill on the day of his death. As above stated, he came to work feeling bad. He had a pain across his neck and up the side of it. He felt that he could go along easily * * * even though he felt as though he were getting cramps under his neck * * * that he could get them very easy. Later in the day he told the witness, Dusenberry, one of the helpers in Mill No. 6, that he did not feel able to finish his turn, that he had cramps across the small

of his neck and across the side of the left leader in his neck. About this time the usual signal was given and he returned to his work. He finished his turn, and started to work on the next turn, when he quit and went outside to a bench in the doorway close to the furnace, and toppled over and died without making any sound. There is no evidence that, throughout the day, there was anything extraordinary or unusual in the course of the employment. The heat at the furnaces and of the metal that was being processed was about as usual. The weight of the "pack" or pieces of metal was about forty-one pounds, which was an average. The metal was approximately thirteen hundred degrees Fahrenheit, which was normal and usual. The regular mill clothes and a mask over his face were worn, and the ventilating systems, which were elaborate, and need not be described at length, were in order and working throughout the day. The day of his death was the 13th of August, and the temperature on that day ranged from seventy-eight degrees, at seven o'clock in the morning, to ninety-two degrees, at one o'clock, and from two to four o'clock in the afternoon it was ninety-one degrees. This temperature was not abnormal for the middle of August. During July and August there are many such days with relation to temperature. The work in the mills was not suspended because of excessive heat or unusual conditions, and this case does not come within the ruling in *Reynolds v. State Roads Com., supra,* where a man, advanced in years, on an excessively hot day, was changed from his light or trivial employment to one of excessive exertion; nor within the ruling in *Schemmel v. Gatch, supra,* where a man was working in a quarry on an intensely hot day, where the temperature was one hundred and one degrees, and considerably above that in the place where he was working, and was exposed to gasses resulting from the explosion of dynamite. There is little question, however, that the employee in this case died from heat stroke or prostration, but, as said by Judge Offutt in the case of *Slacum v. Jolley, supra,* "Before his injuries may be

held compensable, there must be legally sufficient evidence that the workman died of heat stroke or heat prostration, and that such injury was occasioned by some unusual and extraordinary condition in his employment, not naturally and ordinarily incident thereto." These conditions as specified by the court do not exist in the appeal at bar. Beadle had been employed in the mill for thirteen years. His work was hard and exacting. Strenuous muscular exertion was required, and the heat was generated by the furnaces and by radiation of hot steel while it was being rolled into sheets, but this was usual and ordinary, and the weather conditions outside in this season of the year were not abnormal. It was simply a warm day in August. There was no marked change in the weather creating any unusual or extraordinary condition in the employment. Facts similar in character and effect were fully considered in the *Miskowiak* case, and it was there held that heat prostration is not compensable under the Workmen's Compensation Law of Maryland, unless the result is an accident within the meaning of the Workmen's Compensation Law, and in order to entitle the claimant to compensation it is essential that there be at least some evidence that the deceased died of heat stroke or heat prostration, and that such heat was occasioned by some unusual or extraordinary condition of his employment not natural and ordinarily incident thereto. There is no such evidence in this case, and none to distinguish it from the *Miskowiak v. Bethlehem Steel Co., Slacum v. Jolley* or *Schemmel v. Gatch* cases.

Therefore, we must hold that there is no reversible error presented in this record, and that the trial court's instructions were correct, and the judgment of the lower court will be affirmed.

*Judgment affirmed with costs, and case remanded.*