EMMA M. UELTSCHI v. CERTIFIED ICE & FUEL COMPANY AND ANOTHER.[1]

November 24, 1937.

No. 31,481.

*Reyonlds & McLeod*, for relators.

*C. R. Shefveland* and *C. E. Warner*, for respondent.

STONE, JUSTICE.

*Certiorari* to the industrial commission to review an award of compensation for death.

[1]Reported in 276 N. W. 220.

William F. Ueltschi, deceased, was employed by relator to deliver ice on a commercial route in St. Paul. Late in the afternoon of July 13, 1936, homeward bound from work, he was overcome by heat. He was hospitalized that evening and died the following day. An autopsy confirmed the diagnosis of heatstroke, which was the cause of death.

July 11, 12, and 13 were days of extreme heat during which the temperature ranged from a minimum of 82 at night to a maximum of 106 degrees for the day. This boosted ice sales to a peak. Ueltschi delivered a total of 26,675 pounds during the three days, working from early morning to late afternoon or evening in sun and shade. July 11 and 12 he worked alone. On the 13th he had a helper. Saturday evening, July 11, he seemed more than usually tired. Sunday noon he staggered as he left his truck at the plant. He said he did not "feel good" and was going home. There he complained of the heat, said he felt warm, and wanted no food. He rested the remainder of the day. Monday morning, July 13, he was "kind of shaky." Reporting for work, he requested and got a helper, who made most of the day's deliveries. Deceased became more and more weary as the day progressed. He complained of being hot. He was so fatigued that the helper did the driving, but Mr. Ueltschi took the truck back to the plant when deliveries were completed. On the way he went over a curb and through two stop signs. At the plant he took on a passenger who usually rode home with him and drove the truck to a garage about a mile away. Thence he started home in his own car. Two miles farther on, at Seven Corners, deceased drove on the wrong side of the street and was seen to pull at his eyelashes. He then drove over to the right curb. In the car he sat upright with eyes closed and legs jerking spasmodically. That was the "collapse," according to the medical testimony. A fellow employe found him in that condition and drove him home. He was soon taken to the hospital.

Relators argue, first, that the employe did not sustain an accident within the meaning of the compensation act; and, second, if so, the accident was not in the course of his employment.

■ The first contention is that this particular heatstroke was "of slow, gradual onset" and hence not accidental. It is invalidated by the now fixed rule of such cases as State ex rel. Rau v. District Court, 138 Minn. 250, 164 N. W. 916, L. R. A. 1918F, 918; Tate v. Benefit Assn. 186 Minn. 538, 243 N. W. 694; McDonald v. Fulton & Runquist, 187 Minn. 442, 245 N. W. 635; Mudrock v. Washburn Crosby Co. 187 Minn. 518, 246 N. W. 113, which hold that heatstroke is accidental.

. ■ It matters not that the "collapse" did not occur during the hours of the victim's employment or on the working premises. It is enough that the agency of causation was applied during the employment, followed by the collapse directly and immediately, without independent, intervening cause, unrelated to the employment. The opposed argument is that because the result of the damaging force, operating during employment, did not come until later, although it arrived almost immediately and without independent, intervening cause, there was no accident during the employment. That is to attempt bifurcation of a filament too infinitesimal to be split. The purpose of a law is not to be defeated by such snares of naive sophistry.

A heatstroke may come gradually, but its effect in collapse is sudden. According to Dr. Holt, one of the medical witnesses, usually "the collapse comes on within a few hours after the heatstroke." The evidence of deceased's condition, his work and its environment, especially on July 13, is sufficient to show a stroke arising out of and in the course of his work, culminating with immediacy in the collapse, followed by death. The settled rule is that where the work and its own environment of circumstance expose the employe to the happening of an event causing an accident, the accident arises out of the employment. "Although the risk may be common to all who are exposed to the sun's rays on a hot day, the question is whether the employment exposes the employe to the risk." Pearson v. Ford Motor Co. 186 Minn. 155, 242 N. W. 721; McDonald v. Fulton & Runquist, 187 Minn. 442, 443, 245 N. W. 635, 636, and cases cited. Here there is evidence supporting the finding of causal connection. That is enough for us.

The award must be affirmed with an allowance to respondent of $100 as attorney's fees to be taxed with the costs and disbursements. So ordered.