ANNA RUUD v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

April 14, 1938.

No. 31,548.

[1]Reported in 279 N. W. 224.

*Ralph T. Boardman* and *John F. Dulebohn,* for relator.
*Reynolds & McLeod,* for respondent.

HOLT, JUSTICE.

*Certiorari* to review a decision of the industrial commission awarding respondent compensation for the death of her husband while in the employ of relator.

It is conceded that Ole John Ruud, the 68-year old husband of respondent, while at work as a motorman on relator's streetcar in Minneapolis, became suddenly ill and died within 48 hours thereafter. The evidence is conclusive that his death was due to heatstroke, commonly called sunstroke. The finding of the commission, assailed by various assignments of error as not sustained by the proof, reads:

"That on July 14, 1936, Ole John Ruud sustained an accidental injury to his person arising out of and in the course of his said employment resulting in his death on July 16, 1936."

The contention of relator is that the heatstroke was due wholly to natural causes apart from the employment and that the evidence conclusively shows that Ruud in his work was not more exposed to heatstroke than if he had remained at rest in his own home. The facts are that on and prior to July 14, 1936, the heat was very oppressive, the temperature in the afternoon of that day reaching 106 degrees in the shade. The wind came from the southwest with a velocity of about nine miles an hour. Ruud started on his run at 6:03 a. m., as usual, the run being on the Oak-Harriet line from southeast Minneapolis near the east end of Franklin avenue bridge

to Fiftieth street south and Penn avenue, a distance of some nine miles. The cars traverse the loop district on Hennepin avenue. In the cab of the motorman a certain amount of heat is generated from the electricity used in the operation of the car. When stops are frequent more heat escapes into the cab than when the run is uninterrupted. Of course the movement of the car tends to dispel the heat from the cab, as the lower windows therein, except the one in front and the one next to it, are kept open in hot weather. Ruud made no complaint to Lund, the conductor, of discomfort or illness. But soon after the car left Fiftieth street, on the last trip of the crew, at about 2:19 in the afternoon, Lund noticed that Ruud opened the gates to receive passengers with some difficulty. Within a few blocks thereafter Ruud slumped over on the controls and Lund at once stopped the car, assisted Ruud inside, where he collapsed in the forward corner of a side seat. He sank into a comatose state. As soon as medical aid was had it was disclosed that his condition was caused by a heatstroke, as his temperature exceeded 109 degrees. Although the doctors succeeded in reducing his temperature to almost normal within two hours after the attack, he never regained consciousness.

The evidence is conclusive that Ruud's death was the result of a heatstroke suffered in the course of his employment. The controverted fact is whether it arose out of the employment. Relator's claim is that a heatstroke is a disease, and not an accidental injury within the definition of the workmen's compensation act. Furthermore, it is argued that neither the exertion of the work of a motorman nor the place where he must stay produces heat which appreciably affects or increases his body temperature. That a heatstroke may be an accidental injury within the definition of our workmen's compensation act has been definitely settled in this state since the decision in State ex rel. Rau v. District Court, 138 Minn. 250, 164 N. W. 916, L. R. A. 1918F, 918. Since then the legislature has frequently amended the workmen's compensation act, but no amendment attempting to modify the construction this court placed on the statutory definition of accidental injury (G. S. 1913, § 8230[h], 1 Mason Minn. St. 1927, § 4326[h]), holding heatstrokes arising

out of the employment compensable, has been enacted. This court has not deviated from the Rau case except to broaden it in Mudrock v. Washburn Crosby Co. 187 Minn. 518, 246 N. W. 113. The latest decision involving heatstroke is Ueltschi v. Certified I. & F. Co. 201 Minn. 302, 276 N. W. 220, where some of the prior decisions on the subject are cited. We consider the evidence more persuasive in the instant case that the heatstroke arose out of the employment than in the Ueltschi case. The autopsy of Ruud revealed that the heatstroke produced "at the time injury to the physical structure of the body," *viz.*, changes in part of the brain structure. Another of our cases is Pearson v. Ford Motor Co. 186 Minn. 155, 242 N. W. 721, 723, where some of the contentions made by relator are fully met, and numerous decisions involving heatstrokes in this and other courts are cited. There it was said [186 Minn. 159]:

"Courts have not attempted generally to define the phrase 'arising out of * * * employment' so as to make a mutually exclusive and inclusive definition. The determination must be left much to the facts of the particular case."

As sustaining relator's contention that there is no justification in law or fact for the finding that the heatstroke arose out of Ruud's employment, these cases are cited: Burdick v. U. S. F. & G. Co. 54 Ga. App. 868, 188 S. E. 923; Smith v. Standard Sanitary Mfg. Co. 211 Ky. 454, 277 S. W. 806; Beadle v. Bethlehem Steel Co. 172 Md. 541, 193 A. 240, 242; Zwiercan v. International Shoe Co. 87 N. H. 196, 176 A. 286. In the Georgia case it will be noted that the finding that the heatstroke did not arise out of the employment was sustained, one of the three justices sitting dissenting. In the Kentucky case the finding of the commission was sustained, and the court determined that a heatstroke is not compensable under their statute [Kentucky St. § 4880], which provides [see 211 Ky. 456] "that personal injury by accident as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, nor shall they include the results of a pre-existing disease." Likewise, the Maryland case was an affirmance of the decision of the fact-finding body that the heat-

stroke did not arise out of the employment. It may be said, however, that the Maryland court has adopted a stricter rule than this court for determining the fact whether an accident arises out of the employment, saying that in order so to find there must be some evidence [172 Md. 546] "that the deceased died of heatstroke or heat prostration, and that such heat was occasioned by some unusual or extraordinary condition of his employment not natural and ordinarily incident thereto." The New Hampshire case was also one where an award was denied on the ground that the proof was insufficient to show that the heatstroke arose out of the employment. That court, however, holds a heatstroke to be an accident within the compensation statute. It says [87 N. H. 199]: "The distinction in denying compensation when the prostration or other injury is due solely to weather conditions and in allowing it when the employer intensifies the conditions or adds to the danger therefrom is recognized in many cases." A large list of cases from many states is given, among them our case of State ex rel. Rau v. District Court, 138 Minn. 250, 164 N. W. 916. We think that in the case at bar there is sufficient evidence to permit the commission to find that the weather conditions were intensified by the conditions under which Ruud worked.

Relator assigns error in that the finding that the employe sustained an accidental injury arising out of and in the course of his employment is not a proper finding of fact but a mere legal conclusion. We regard such finding as an ultimate fact required to be determined by the commission. If other specific facts were desired by relator to be found, application should have been made to the commission for such finding.

Error is assigned as to the exclusion (a) of the records in the office of the clerk of vital statistics in the city of Minneapolis showing a high death rate due to the extreme heat wave of July, 1936, (b) excluding the offer of proof that no other claim for heatstroke had been made against relator during its long operation of its streetcars by electricity, and (c) the refusal to admit in evidence the experiments made on November 10, 1936, with the car operated by Ruud in respect to the heat discharged in the motorman's cab

from the operation of the car. We regard the rulings unquestionably correct as to (a) and (b). And as to (c), it was at most evidence which is largely within the commission's discretion to admit or reject. It seems to us, in this instance, that there was no abuse of judicial discretion.

The award is claimed to deprive relator of the equal protection of the laws, contrary to both our state and federal constitutions, and as arbitrary. The constitutionality of our workmen's compensation act against attacks like the present, we think, has been settled as far as this court is concerned in the cases cited in 6 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 10383, note 1.

The award of compensation is affirmed, and the writ is discharged. The respondent may tax attorneys' fees in the sum of $100 as costs.

